IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DIVISION OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| **ANTONIO ARMSTRONG JR.,** | )( | Civil Action No. 4:23-cv- |
| | )( | (Jury Trial) |
| *Plaintiff,* | )( | |
| | )( | |
| V. | )( | |
| | )( | |
| **CITY OF HOUSTON, TEXAS,** | )( | |
| | )( | |
| *Defendant.* | )( | |

## PLAINTIFF'S ORIGINAL COMPLAINT

**TO THE HONORABLE JUDGE OF THE COURT:**

**NOW COMES** Plaintiff ANTONIO ARMSTRONG JR. and complains of the CITY OF HOUSTON, TEXAS, and will show the Court the following:

## JURISDICTION AND VENUE

1. This is an action brought under the common law of the State of Texas and for violations of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction over Plaintiff's federal claims, under 28 U.S.C. § 1331, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction, under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims. Venue is proper in this Court, under 28 U.S.C. § 1391(b) because the incident at issue took place in Harris County, Texas within the United States Southern District of Texas.

## PARTIES

2. Plaintiff Antonio Armstrong, Jr. is a resident of Harris County, Texas.

3. The City of Houston, Texas, is a municipality existing under the laws of the State of Texas and situated mainly in Harris County, Texas, in the U.S. Southern District of Texas, Houston Division and can be served with process by serving the City of Houston Secretary at 901 Bagby, Houston, TX 77002.

## INTRODUCTORY FACTS

4. Antonio Armstrong, Jr. was arrested at his home July 29, 2016, by City of Houston police personnel and accused of the capital murder of his parents at the age of sixteen. When the Houston police arrived Armstrong's parents had both been shot in their bed and both died.

5. The Houston police investigated the crime scene and immediately took control of much of the evidence including the gray T-shirt that Armstrong was wearing. The T-shirt was extensively tested by the Houston Forensic Science Center (HFSC) and no DNA evidence was found. When the T-shirt was not in possession of the Harris County District Attorney's Office the T-shirt was in the possession of the City of Houston including at the HPD Property Room at 1202 Washington Avenue, Houston, TX 77002.

6. Antiono was twice tried for capital murder in the 178th Judicial District

Court of Harris County, Texas and both times there was a hung jury, the second one was eight Not Guilty to four Guilty on October 26, 2022. A main argument of Antonio's defense was that no DNA evidence was found on Antonio or his clothes. The Harris County District Attorney's office was so obsessed with losing the trial they had to file a retraction of a false statement to the Houston Chronicle. **Exhibit 1.**

7. Suddenly, just three days before the start of yet a third trial, in June 2023, as KPRC TV Channel 2 later reported:

> "Within the last few weeks, the T-shirt was retested at a crime lab after what appear to be flakes of blood were discovered <u>under an adhesive HPD visitor's badge</u> that had been stuck to his shirt, sources say.
>
> The badge was believed to be put on Armstrong by someone else because he was handcuffed when he arrived at police headquarters for his interview with officers."
>
> *--https://abc13.com/aj-armstrong-accused-of-killing-parents-hearing-for-new-evidence-likely-blood-on-t-shirt/13405646/*

8. July 31, 2023, it was reported by local TV stations that at opening statements in Armstong's third trial the Harris County District Attorney prosecuting the case stated to the jury that there were two pieces of blood with murder victim Antonio Armstrong Sr.'s DNA that were on the back of a name tag sticker (or underneath the name tag) that the police had put on the extensively-tested T-shirt Antonio wore when he was arrested the night of the murder.

9. At the third trial the experienced Houston police officer who put the

name tag on Armstrong testified under oath that he saw no blood on Armstrong, the T-shirt, or the name tag.

10.   The lead HPD Homicide Detective who interrogated Armstrong testified under oath at the third trial he saw no blood on Armstrong.

11.   HPD Homicide Detective Dodson who observed Armstrong testified under oath at the third trial he saw no blood on Armstrong.

12.   Experienced HPD Officer Webber who transported Armstrong from the crime scene testified under oath at the third trial he saw no blood on Armstrong.

13.   Experienced HPD Officer Maldanado who helped transport Armstrong from the crime scene testified under oath at the third trial he saw no blood on Armstrong.

14.   No one testified that they saw blood on Armstrong.

15.   At Armstrong's third trial an expert witness for the prosecution testified that one of the two particles of blood allegedly found on Armstrong's T-shirt under the visitor badge or on the back of the visitor badge after around seven years was transferred there. This implies that human action, after the T-shirt was taken from Armstrong, caused Armstrong's father's blood particle to be there.

16.   Former Harris County prosecutor Lisa Andrews opined the alleged discovery of blood/DNA was "highly unusual."

17.   Based on the square area of the front of a T-shirt the size of Armstrong's

and the area of the average visitor's badge the probability that two separate flakes of blood, and no others, would both be found in the area encompassed by the visitor's badge is *no greater than 1 in 100 and probably much less* unless deposited there on purpose.

18. Considering the foregoing, and the following, the blood was planted by, or in conspiracy with, one or more persons at the HPD in order to try and convict Armstrong of capital murder and to taint his reputation in the mind of the public.

19. There is a long history of planting evidence by the City of Houston police. In all probability one or more individuals purposefully caused the deposition of Antonio Armstrong Sr's blood on the back of the name tag or underneath the name tag on Antonio's T-shirt while it was in the HPD Property Room or otherwise in HPD's possession.

## ADDITIONAL FACTS

20. In one of the biggest police evidence planting scandals in American history many criminal defendants have been exonerated or their cases overturned by the Texas Court of Criminal Appeals after Houston police officer Gerald Goines and other HPD officers planted evidence to secure felony convictions. Goines was found out after a botched drug raid killing two civilians and the wounding of several police officers by friendly fire revealed that the heroin "evidence" was planted and the reason for the drug raid was fabricated. This systemic planting of evidence by the

Houston Police Department went on for over a decade and many more Houston police officers have been implicated in the evidence planting scandal. Due to the false statements made and planting of evidence by Goines and other HPD officers concerning the raid, Houston police began a systematic review of some combined 14,000 cases which had been handled by the HPD officers. By the end of 2021, more than <u>160 of those cases</u> had been dismissed.

--https://en.wikipedia.org/wiki/Harding_Street_raid

21. In 2000 a Houston police office shot and killed Lanny Blaine Robinson claiming Robinson brandished a knife in an undercover police car. A federal civil rights lawsuit was filed, **Civil Action No. 4:02cv1435.** A fair reading of the police records referenced in the federal judge's Order on motion for summary judgment indicates not only that a knife was planted in an area to associate it with the deceased, but a car window was rolled down after the killing to bolster where the knife was found. See **Exhibit 2,** pages 17-19.

22. The Houston police shot and killed Randy Webster in 1977 and then planted a gun near him to justify the killing. *https://www.texasmonthly.com/news-politics/the-throwdown/*

## COUNT 1-COMMON LAW MALICIOUS PROSECUTION

23. Previous Paragraphs are hereby re-alleged and incorporated by reference in this Count.

24. This count sets forth claims against Defendant for malicious prosecution and is pled in the alternative.

25. Defendant caused the continuation of criminal proceedings against Plaintiff. They acted intentionally and with malice in depositing the blood/DNA upon Antonio's clothing and/or the name tag while others moved forward with acts in continuance of the prosecution knowing the blood/DNA was deposited purposefully by human action sometime after the T-shirt left the possession and control of Armstrong.

26. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future.

## COUNT 2-42 USC SECTION 1983
## FOURTH AMENDMENT VIOLATION

27. Previous paragraphs are hereby re-alleged and incorporated by reference in this Count.

28. This count sets forth claims against Defendant for violating the Fourth Amendment by acting under color of state law when they acted and failed to act thereby allowing planted blood/DNA evidence to be attributed to Plaintiff in the public including public governmental records when this was knowingly false. Furthermore, the planted evidence was knowingly used to attempt to convict Plaintiff of capital murder by statements and introduction to jurors at jury trial.

29. Defendant caused the continuation of criminal proceedings against Plaintiff. Defendant's employees and agents acted intentionally and with malice in depositing the blood/DNA upon Armstrong's clothing and/or the name tag while others moved forward with acts in continuance of the prosecution knowing the blood/DNA was deposited purposefully by human action sometime after the T-shirt left the possession and control of Armstrong.

30. As a direct and proximate cause of Defendant's actions, Plaintiff has been damaged, which damages include: mental anguish, pain and suffering, loss of capacity for the enjoyment of life, embarrassment, humiliation, and loss of reputation. These damages have occurred at present, in the past and will most likely occur in the future.

## COUNT 3-42 USC Section 1983

## FOURTEENTH AMENDMENT VIOLATIONS

31. Previous Paragraphs are hereby re-alleged and incorporated by reference in this Count.

32. This count sets forth claims against Defendant for abuse of power and the violation of the Plaintiff's property and liberty interests under the Due Process clause of the Fourteenth Amendment, brought through U.S.C. §1983. This count is set forth in the alternative and both the procedural and substantive Due Process rights of the Plaintiff are implicated and a claim for outrageous and shocking the conscious conduct is made herein.

33. Defendant violated the substantive and procedural Due Process clause of the Fourteenth Amendment by planting DNA/Blood evidence on Plaintiff's clothes thereby, causing the malicious criminal prosecution of Plaintiff, the making illegal false sworn statements in official documents regarding Plaintiff, and violating the civil and constitutional rights of Plaintiff against illegal search and seizure of their person and property, and their illegal and improper detention, prosecution and incarceration, for which there was no justification or legal basis. The actions against Plaintiff were taken knowingly, maliciously, and unlawfully, and under color of state law.

34. Defendant misused and abused their power, possessed by virtue of state law and made possible only because he was clothed with the authority of state law. The violation of Plaintiff's rights, as described above, occurred under color of state law and is actionable under 42 U.S.C. §1983.

35. Furthermore, Defendant failed properly train and discipline police officers, employees, and agents to prevent the harm that was caused to Plaintiff including policies or procedures to properly retain an safe keep evidence; policies and procedures to identify officers who falsify facts to support probable cause affidavits and prosecute criminal defendants; policies and procedures to supervise officers in the City of Houston's employ; policies and procedures to detect officers who may engage in criminal activity by planting evidence upon citizens or on their belongings like Plaintiff; and policies and procedures to properly discipline officers who willfully trample on the constitutional rights of citizens like Plaintiff, and to prevent the type of harm described in part above.

36. The City of Houston has a custom, policy, practice, and procedure of planting evidence without repercussions and not disciplining or training officers adequately and is therefore liable under 42 U.S.C. Section 1983 and 1988.

## LIABILTY FOR FAILURE TO INTERVENE

37. Plaintiff incorporates the preceding paragraphs as if fully set forth

herein.

38. A law enforcement officer "who is present at the scene and does not take reasonable measures to protect a suspect from another officer's use of excessive force may be liable under section 1983." *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995). Although *Hale* most often applies in the context of excessive force claims, this Court recognized that other constitutional violations also may support a theory of bystander liability. *Whitley v. Hanna*, 726 F.3d 631, 646 n. 11 (5th Cir. 2013)(citing *Richie v. Wharton County Sheriff's Dep't Star Team*, No. 12–20014, 2013 WL 616962, at *2 (5th Cir. Feb. 19, 2013)(per curiam) (unpublished)(noting that plaintiff failed to allege facts suggesting that officers "were liable under a theory of bystander liability for failing to prevent ... other member[s] from committing constitutional violations")). Further, the Second Circuit has stated that "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir.1994). *See* also, *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972)("we believe it is clear that one who is given the badge of authority of a police officer may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge."). An officer observing or having knowledge of the planting of evidence may be liable under § 1983 under a theory of

bystander liability when the officer "(1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Whitley*, 726 F.3d at 646.

## **MENTAL ANGUISH**

39. Plaintiff incorporates all preceding paragraphs as if set fully set forth herein.

40. Plaintiff suffered at least anxiety, fear, and depression because of the acts of the defendants and, therefore, Plaintiff seeks damages for mental anguish past and future as well as the pain and suffering, past and future, and other damages set forth above.

41. Plaintiff suffered loss of reputation.

## **PUNITIVE DAMAGES**

42. Plaintiff incorporates all preceding paragraphs as if set fully herein.

43. Defendant's actions and inactions cause them to be liable for punitive damages as they were consciously indifferent to the Plaintiff's constitutional rights and they did the acts knowingly, such acts being extreme and outrageous and shocking to the conscious.

NOTICE TO PRESERVE EVIDENCE

BY THE FILING OF THIS PUBLIC LAWSUIT AND PROVIDING SAME TO THE CITY OF HOUSTON, THE CITY OF HOUSTON AND ITS

<u>EMPLOYEES AND OTHER PERSONS ARE ON NOTICE, IF NOT BEFORE, THAT ALL VIDEOS, CHECK INS, PHOTOS, SIGN IN SHEETS, OR EVIDENCE FROM THE HOUSTON POLICE PROPERTY ROOM(S) AND BUILDING RELATING TO ANY EVIDENCE IN THE ARMSTRONG CRIMINAL CASE AS WELL AS ALL PHOTOS, VIDEOS, REPORTS, STATEMENTS, RECORDINGS, MEMOS, TEXTS, TELEPHONE RECORDS, AND OTHER MATERIALS OR POTENTIAL EVIDENCE IS TO BE PRESERVED AND NOT DESTROYED, SECRETED AWAY, OR ALTERED IN ANY WAY SO AS TO BE USED IN THIS INSTANT CIVIL ACTION. THIS INCLUDES ALL COMMUNICATIONS OF ANY KIND WITH THE HARRIS COUNTY DISTRICT ATTORNEY'S OFFICE, EXPERT ROSSI OR ANY OTHER PERSON RELATED TO THE ARMSTRONG CRIMINAL CASE. IF EVIDENCE IS NOT PRESERVED IT IS UNDERSTOOD A COURT MAY STRIKE THE PLEADINGS OF THE CITY OF HOUSTON OR INSTRUCT THE JURY THAT EVIFDENCE WAS SPOLIATED OR OTHER RELIEF MAY BE GRANTED AGAINST THE CITY OF HOUSTON OR OTHER DEFENDANT.</u>

## <u>ATTORNEYS' FEES</u>

44. Plaintiff is entitled to recover attorneys' fees and costs to enforce his Constitutional rights and under 42 U.S.C. Sections 1983 and 1988.

## <u>JURY TRIAL</u>

45. Plaintiff requests a trial by jury on all issues triable to a jury.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court:

A. Enter judgment for the Plaintiff and against the individual defendants and the City of Houston holding them jointly and severally liable;

B. Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs, pursuant to federal law, as noted against Defendant(s);

C. Award damages to Plaintiff for the violations of his Constitutional rights;

D. Award Pre- and post-judgement interest;

E. Award Punitive damages against each and every individually named defendant,

F. Grant injunctive relief to investigate evidence planting in the Houston Police Department and other involved entities; and

G. Grant such other and further relief as appears reasonable and just, to which plaintiff shows himself entitled.

Respectfully Submitted,

/s/ *Randall L. Kallinen*
Randall L. Kallinen
KALLINEN LAW PLLC
State Bar of Texas No. 00790995
So Dist. of Texas Bar No.: 19417
511 Broadway Street
Houston, Texas 77012
Telephone:   713/320-3785
FAX:         713/893-6737
E-mail:      AttorneyKallinen@aol.com

Alexander C. Johnson
KALLINEN LAW PLLC
State Bar of Texas No. 24123583
U.S. So. Dist. of Texas Bar No. 3679181
511 Broadway Street
Houston, Texas 77012
Telephone:   573/340-3316
FAX:         713/893-6737
Email:       alex@acj.legal

ATTORNEYS FOR PLAINTIFF