# Exhibit 3

9/14/2023 3:00 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 79564725
By: B Pineda
Filed: 9/14/2023 3:00 PM

**CASE NO. 1546111**

IN THE 178TH DISTRICT COURT

HARRIS COUNTY, TEXAS

---

ANTONIO ARMSTRONG, Jr.

V.

THE STATE OF TEXAS

---

**MOTION for NEW TRIAL PURSUANT TO T.R.A.P. 21**

Comes now Antonio Armstrong Jr, through his attorney of record, Patrick f McCann. He brings this motion for new trial pursuant to Texas Rule of Appellate Procedure 21 and offers the following in support of the motion:

1) . The verdict is contrary to the law and the evidence.

2). Jurisdiction was never properly acquired as the legal guardian of Mr. Armstrong when he was a juvenile was never served with the petition for certification for transfer to adult court. Jurisdiction may be challenged at any time. Improper transfer means no jurisdiction, as the statutory language in the Texas Family Code is mandatory. See Texas Family Code Chapter 54. Thus, this judgment and sentence are void as the trial court never acquired jurisdiction. See attached affidavits of trial counsel and guardian.

3). The state committed misconduct when it failed to turn over impeaching information regarding their expert, Officer Rossi. Rossi had been the subject of

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 1 of 6

a complaint for planting evidence at the Texas Forensic Science Commission. That information was not turned over to the defense and was critical since her credibility was the essential element for the jury to determine whether certain evidence was believable or not. The jury should have heard that. Has the defense known about the allegation, it may have resulted in a different strategy as to the admissibility. See *Brady v, Maryland,* 373 U.S. 83 (1963), *Giglio v. United States,* 406 U.S. 140 (1972). See attached complaint against Officer Rossi.

4)The state's expert Rossi testified outside her area of expertise which was a violation of due process and fair trial rights in this instance. See Amend. XIV, U.S. Const. also *Daubert v. Merrell Dow Pharmaceuticals* 509 U.S. 570 (1993)

5). The jury was improperly denied knowledge of an alternative theory regarding the killing of Antonio Armstrong Sr. and his wife. That reason was testified to during a hearing outside the presence of the jury by Maxine Adams who alleged that Antonio's father ran a prostitution ring out of his gym. That information should have been permitted before the jury as they never heard about the existence of an alternate suspect/suspects or an alternative reason for the killing, i.e., involvement in a criminal enterprise. This erroneous ruling deprived the defendant's right to present a defense. See *Chambers v. Mississippi*, 410 U.S. 284 (1973)

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 2 of 6

6). The sentence for Antonio Jr is unconstitutional as he was a juvenile at the time of this crime. Even if one believes he is guilty the current Texas juvenile sentencing scheme violates the prohibitions of the 14th and 8th amendments as they apply to juveniles in Texas and thus Mr. Armstrong. Under current law he is sentenced to life with only the possibility of parole at forty years [calendar] time. The current statute was made retroactive to all juveniles certified as adults and has resulted in an unconstitutional sentence of an effective life without parole.

If he had been tried as a juvenile the jury would have had numerous sentencing options including a cap of forty years total as the sentence. Contrast this with the faint “hope” of a parole after forty years have passed, when most if not all current family members will have passed away, and any good he has done in his life up to now or any mitigating reasons to help his cause at a parole hearing will have vanished into the mists of time. This is in violation of the Eighth Amendment as it makes it more heinous for a juvenile to be convicted of taking a life. This violates *Miller v. Alabama*, and this Honorable Court should hear any potential mitigating evidence in order to assist it in both crafting a remedy and declaring this sentence unconstitutional. *Miller v. Alabama*, 567 U.S. 460 (2012).

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 3 of 6

**PRAYER**

The Movant prays that the Court grant this motion or set it for a hearing within the time limit of seventy-five days from date of sentencing.

Respectfully submitted,
/s/ Patrick F. McCann
SBN: 00792680
700 Louisiana St., Ste 3950
Houston, TX 77002
(713) 223-3805
writlawyer@outlook.com

**SETTING FOR A HEARING**

The above Motion for New Trial is hereby set for an evidentiary hearing on ______________________________. All parties are ordered to appear and present evidence, witnesses and argument as to this Motion.

____________________

JUDGE PRESIDING

Date: ______________

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 4 of 6

CASE NO. 1546111

IN THE 178TH DISTRICT COURT

HARRIS COUNTY, TEXAS

ANTONIO ARMSTRONG, Jr.

V.

THE STATE OF TEXAS

MOTION for NEW TRIAL PURSUANT TO T.R.A.P. 21

**CERTIFICATE OF PRESENTMENT**

**I hereby certify that this motion for new trial was presented to the court within ten days of filing.**

**Judge presiding: ________________**

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 5 of 6

## Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Patrick McCann on behalf of Patrick McCann
Bar No. 00792680
writlawyer@outlook.com
Envelope ID: 79564725
Filing Code Description: Motion for New Trial
Filing Description: Motion for New Trial
Status as of 9/14/2023 5:13 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Richard Detoto | | rickdetoto@icloud.com | 9/14/2023 3:00:10 PM | SENT |
| Chris Collings | | chris@collings-law.com | 9/14/2023 3:00:10 PM | SENT |
| Andrew J.Smith | | attorneyandrewjsmith@gmail.com | 9/14/2023 3:00:10 PM | SENT |
| Jennifer Baker | | jl@jlcarpenterlaw.com | 9/14/2023 3:00:10 PM | SENT |
| RYAN TRASK | | TRASK_RYAN@DAO.HCTX.NET | 9/14/2023 3:00:10 PM | SENT |
| Farheen Roche | | Roche_Farheen@dao.hctx.net | 9/14/2023 3:00:10 PM | SENT |
| Josh Reiss | | Reiss_Josh@dao.hctx.net | 9/14/2023 3:00:10 PM | SENT |
| John Jordan | | jordan_john@dao.hctx.net | 9/14/2023 3:00:10 PM | SENT |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271036 - Page 6 of 6

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this November 29, 2023

Certified Document Number: 110271036 Total Pages: 6

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

9/14/2023 3:00:10 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 79564725
By: B PINEDA
Filed: 9/14/2023 3:00:10 PM

CAUSE NO. 1546111

| | | |
|---|---|---|
| | § | IN THE DISTRICT COURT OF |
| | § | |
| | § | |
| | § | HARRIS COUNTY, TEXAS |
| | § | |
| ANTONIO ARMSTRONG, JR. | § | 178TH JUDICIAL DISTRICT |

## AFFIDAVIT

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF HARRIS | § |

BEFORE ME, the undersigned authority, on this day personally appeared Richard DeToto, who, after being by me duly sworn upon his oath, did say:

My name is Richard DeToto. I am a lawyer in private practice in Harris County, Texas. I am in good standing with the State Bar and licensed in Texas.

I was one of the trial attorneys for Antonio Armstrong, Jr. I am over eighteen years of age and competent to make this affidavit.

I was Antonio's lawyer during his transfer hearing to adult court. I am aware that Antonio was served with the certification petition during the hearing. However, I do not recall any adult in his family being served with notice of the hearing.

I was involved in all three of the trials. In the last and most recent trial we did not receive notice of a complaint against the blood spatter expert, Officer Rossi, by Dr. Robert Collins. Rossi's testimony in the third trial was crucial because it involved new and dramatic evidence of what the state believed was incriminating blood evidence, and what we believed was simple careless transfer. Rossi's credibility before the jury was critical to the prosecution's case, and the complaint against her by a respected DNA expert would have allowed me to impeach her. I also believe she testified far outside her competence, and thus provided misleading information to the jury

Our decision to not contest the new blood evidence was made without knowledge of the complaint and allegations against witness Rossi. Had we known of the complaint and allegations against Rossi, we would have reconsidered our position and our advice to our client regarding contesting the newly found blood

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271040 - Page 1 of 2

evidence.

I raised the prospect of a different person killing the deceased due to a prostitution ring that Antonio's father was allegedly involved in. There was a negligent investigation of this issue by the Houston Police Department. We sought information about this ring raised by a witness named Maxine Adams, which was not disclosed for approximately 18 months by the Harris County District Attorney's office. The trial court had a hearing on this issue but prevented us from bringing this up in front of the jury. The jury never heard that this witness existed, and we were not allowed to mention it. The fact that there were two prior mistrials with hung juries, this should have been heard by the jury. Here, I believe the trial court denied us the ability to present a defense.

If I had information regarding Dr. Robert Collins' complaint to impeach Rossi and/or the court had permitted me to show the jury that there was another suspect related to the prostitution ring, I believe we would have had a different outcome.

Further affiant sayeth not."

RICHARD DETOTO

SUBSCRIBED AND SWORN TO BEFORE ME on this the 14 day of

September, 2023.

Notary Public, State of Texas

JOYCE ORTEGA
7087243
NOTARY PUBLIC
STATE OF TEXAS
EXPIRES
MARCH 24, 2026

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271040 - Page 2 of 2

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this November 29, 2023

Certified Document Number: 110271040 Total Pages: 2

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

9/14/2023 3:00:10 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 79564725
By: B PINEDA
Filed: 9/14/2023 3:00:10 PM

# Detailed Complaint to the Texas Forensic Science Commission against Montgomery County Sheriff's Office CSI Celestina Rossi, CSI Christine Ramirez, WPD Sgt. Kevin Rooney, Montgomery County ADA Andrew James, Bode Technologies, et. al.

February 4, 2019

**Complaint made by:**
Dr. Robert Collins
Collins Forensic Consulting
Houston, TX 77027
713-401-4405
robertcollinsphd@gmail.com

## Introduction

I am the complainant, Dr. Robert Collins. I have a Ph.D. in Molecular and Human Genetics from Baylor College of Medicine (2000) and a B.S in Genetics from Texas A&M University (*cum laude*, 1994). I have fourteen publications in top-tier, peer-reviewed journals that have been cited over 1000 times (CV attached). I am a DNA expert/consultant for the defense in criminal cases including Capital Murder, murder, robbery, and sexual assault. I was appointed by the presiding Judge in this Capital Murder case to aid the defense and ensure the defendant received a fair trial.

This complaint is specifically against Montgomery County Sheriff's Office (MCSO) Crime Scene Investigator (CSI) Celestina Rossi, MCSO CSI Christine Ramirez, and Willis Police Department Sgt. Kevin Rooney. Rossi, Ramirez, and Rooney planted fabricated DNA evidence in an attempt to falsely convict Fred Dexter Lee of Capital Murder. This complaint is also against MCADA Andrew James for not informing the defense when he discovered that the three above lied about the DNA testing done in this case. Instead, ADA James intentionally tried to cover up Rooney, Rossi, and Ramirez's deceit by providing fraudulent documents to the defense. The documents he provided contained the clues needed to unravel the entire story.

The crime in this case occurred over eleven years ago on September 12, 2007. Brandon Brazel was shot and killed in his car while parked at the Kroger's parking lot in Willis, Texas. The initial investigation determined it was a drug deal gone bad before fizzling out. Five years later, WPD Sgt. Kevin Rooney decided he would re-open the case on his own. Two years after that, Fred Lee was arrested for the crime based on Sgt. Rooney's investigation. On January 14, 2019, after sitting in jail for three and a half years, Fred Lee was finally found "not guilty" by a jury. Fred Lee survived 3 ½ years in jail, an attempt to plant DNA evidence that only failed because it was a mixture, and false testimony by the Houston DPS Crime Lab's Technical Leader Andrew McWhorter. Sometimes, it's not easy for justice to find the light of day in Texas.

This case has many actors and not all of them are bad. Although some pieces of evidence might make it appear that this person or that person might be involved, I believe they were just gullible and/or had blind trust in their colleagues. I can easily see how this can be so. However, ADA James was fooled only up to when he discovered Rooney, Rossi, and Ramirez had lied. He chose to cover up their transgression instead of doing the right thing. The State cannot be allowed to get away with this type of behavior. I will tell the story of this complaint in the order that I discovered it. I will make inferences and alternative explanations and urge the reader to do the same. Criticism is how science is advanced. All of the documents used in this complaint were obtained by me through discovery or from ADA James in the above case. Some testimony may be needed to fill in the details but I believe the documents that I will present conclusively prove my case.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 1 of 63

## Cast of Characters

| | |
|---|---|
| Sgt. Rooney | Kevin Rooney - Willis Police Department. |
| CSI Rossi | Celestina Rossi - Montgomery County Sheriff's Office. |
| CSI Ramirez | Christine Ramirez - Montgomery County Sheriff's Office. |
| ADA James | Andrew James - Montgomery County District Attorney's Office. |
| ADA Shirley | Michael Shirley - Montgomery County District Attorney's Office. |
| Det. Duroy | Montgomery County Sheriff's Office Cold Case Squad. |
| Det. Greenwood | Montgomery County Sheriff's Office Cold Case Squad. |
| Bode Lab | Bode Technologies, forensic DNA and serology services (Virginia, USA). |
| The seat covers | The driver's and passenger's seat covers from the victim's car (Mustang). |

## Motion to Consume

I was appointed to this case in May of 2017. Over the next two months, I received well over 2000 documents including DNA reports, raw DNA data, police case files, forensic laboratory case files, phone logs, emails, and evidence submissions. In September of 2017, I was notified the State had discovered the driver's and passenger seat covers from the victim's car and they had never been tested for DNA. The ADA's office was excited about finding these key pieces of evidence. They filed a "Motion to Consume" seeking permission from the court to consume all of the DNA recovered from them during their analysis by Bode Lab. In the previous five evidence submissions for forensic DNA testing, permission was given to consume the entire sample by the MCSO without a court order. However, the ADA's office was excited about the finding the seat covers and wanted to make sure everything was by the book. I immediately worked to find out as much as possible about the seat covers so I could assist in answering the State's motion.

The driver's and passenger's seat covers from Brandon Brazel's car were key pieces of possible DNA evidence from the moment of the crime. The killer parked next to Brazel's car in the Kroger's parking lot, opened the passenger door of the victim's 1997 Mustang and got in. Six minutes later the killer got out and left in the car that he/she came in. When the victim was found several hours later, there were several hydrocodone pills between the victim's legs and on the driver's side floor. His legs had been pushed towards the driver's door so the killer could pick up the pills that fell on the floor during the crime. The killer had sat on the passenger seat cover for six minutes and probably touched it with their hands while getting into and out of low riding car. The killer also probably dug under the victim's leg, touching the driver's seat cover while trying to recover the spilled pills. DNA may or may not be there but these are solid pieces of evidence.

The seat covers were submitted to the DPS crime lab soon after the crime along with swabs taken from several areas inside the victim's car. These include swabs from the passenger door release handle, blood spots on the victim's trousers, the victim's fingernail scrapings, and areas inside the passenger side of the car. It is unclear why the seat covers were returned untested by the DPS lab. However, it would be very difficult to swab the seat covers for DNA after they are removed from the seat. They should have been covered with several swabs used over different areas while still on the seat. Swabbing the entire area with a single swab will most likely end up with a mixture but separate, individual areas may have produced a usable DNA profile. The seat covers were returned to the Willis PD in the separate medium-sized brown paper bags in which they arrived. Evidently, they had sat in the evidence room, untested, since 2008.

The email from ADA Andrew James concerning the testing of newly found seat covers is on the next page. Several characters are introduced in this email including CSI Rossi, CSI Ramirez, and Det. Greenwood. I have annotated several items in the email. Any annotated documents in this complaint are provided without notes in Appendix I. Please read the email and notations on the following page.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 2 of 63

# Email from ADA James to defense about seat covers.

From: **James, Andrew** <andrew.james@mctx.org>
Date: Fri, Sep 22, 2017 at 3:52 PM
Subject: State of Texas vs. Fred Lee
To: Robert Morrow <ramorrow15@gmail.com>
Cc: "Gerald Bourque (gerald@geraldebourque.com)" <gerald@geraldebourque.com>
"Heathe

**Swabs are taken of both seat covers By CSI Rossi and CSI Ramirez. There is not any new technology or testing available now, only additional loci have been added to STR-DNA testing. Ramirez expects the killer's DNA to be in the vehicle.**

Robert,

I'm writing to follow up on our conversation from this morning. Attached is the motion that I've filed asking permission from the court for Bode to be allowed to consume the entirety of the DNA samples we sent to them if they need to use them.

The samples are swabs that were taken this Wednesday, 9-20-17. One of the swabs is from the seat cover from the passenger seat of Brazel's vehicle and the other is from the driver's seat of Brazel's vehicle. We decided to take these swabs (the swabs were taken by Cele Rossi and Christine Ramirez at the MCSO crime lab) after meeting that morning and Rossi and Ramirez brain storming that there is technology and testing that are available now that weren't available back in 2007 and Ramirez stated to that she would expect the killer's DNA to be in the vehicle.

We got permission to send the swabs to Bode and pay for their 15-day turnaround of testing. We sent them to Bode yesterday and they got them today. Det. Greenwood informed me that Bode told him that they may need to consume the entirety of the samples in their testing.

Additionally, and this is not included on the current motion, but there are several swabs that were taken from Brazel's vehicle from the passenger side, such as the door area, that were tested by DPS back in 2007 and they were unable to get any profiles. We may send some of them to Bode to see if they were to test them with the current technology if they could get a profile. But, that isn't 100% yet and I'll keep you all updated as to that as well.

Lastly, Andrew McWhorter completed the chart that was requested and it is attached.

I'll see you Monday morning at 8:30. Have a nice weekend.

Andrew James
Assistant District Attorney
Chief, Vehicular Crimes
Montgomery County District Attorney's Office
207 W.
Conroe
P: 936-
F: 936-
E: Andrew.James@mctx.org

**This is the source of the chart used by McWhorter to give the false testimony in my previous Forensic Science Commission complaint. In over a year since this email, no DNA report to accompany the chart or any supplemental discovery data were provided.**

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 3 of 63

I looked over the pertinent documents provided by ADA James and replied to the defense team about any new testing. The previous DNA reports showed that a scent pad obtained from the passenger seat cover on the day of the crime had a mixture of 3 or more individuals. The raw data supplied supported this and also showed that Fred Lee's DNA profile was not included in the mixture found. The other items tested from the victim's 1997 Mustang did not contain Fred Lee's profile either. I replied to the team that I did not believe Fred Lee's profile would be found in the new testing either. Also, there is no new technology and the chart from McWhorter only showed that the DNA extracts stored by the DPS Crime Laboratory had degraded badly. Otherwise, motions to consume became so routinely granted by courts that DA's don't bother filing them anymore. I did not expect the Judge in this case to rule any differently.

After all the hoopla, no usable profiles were found on the seat covers. Fred Lee's profile was not found on any of the other items tested either. However, after looking at the DNA reports, the raw DNA data, and the police reports from the case, I had found discrepancies that raised serious concerns about the authenticity of the evidence. A trial date had been set in September of 2018 so I prepared a presentation to show the defense team what I had discovered in August.

## **Initial Indications Were that DNA Evidence Was Planted.**

One of the documents obtained through discovery is the "WPD Report Section 8-1 as of 9-21-17" (Rooney's report). This is a 34-page document by Sgt. Rooney that chronicles his investigation of the crime. The annotated pages and excerpts I will use from this document are outlined in blue. The entire document is provided in Appendix I. Other key documents include the Bode DNA Lab Report dated June 6, 2013 and electropherograms of the raw data the report is based on.

At the time of the crime in September of 2007, Fred Lee drove a white 1994 Buick Roadmaster. A blurry, low quality video of the Kroger's parking lot showed a white car pull in next to the victim's car. A person get out of the car and entered the victim's car. The killer then drove away in his or her car. Five and a half years later, Sgt. Rooney began investigating the case again. He used police resources to locate the current owner of Fred Lee's 1994 Buick. It was now in Houston, Texas. The reader is invited to read how Sgt. Rooney solved this case in one day in his report (Appendix I).

Willis, Texas is a small city with a population, in 2007, of approximately 4600 people. It is located just under 50 miles north of Houston. Sgt. Rooney was a police officer in Willis and knew both the victim, Brandon Brazel, and Fred Lee. He also knew the suspects who's DNA profiles did match DNA profiles found on evidence from the crime scene. I do not know Rooney's motive for ignoring the legitimate DNA evidence in this case or why he chose to frame Fred Lee instead.

It is 2013 and Rooney does not know who or how many different people have owned the car since Fred Lee did but he wants to test it for blood. In his report, he states "It is in my opinion that the vehicle may contain blood evidence from the murder in 2007." Rooney travels with Texas Ranger Doolittle to Houston and finds the car. Rooney explains these events in the section from his report on the next page.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 4 of 63

"It is Rooney's opinion that the vehicle may contain blood evidence from the murder 2007." The murder happened 5 1/2 years earlier and we don't know how many different owners the car has had. However if Fred Lee did commit the murder, it is reasonable to think he may have tracked the victim's blood into his car.

Rooney's Report

On 03-08-2013 I and Ranger Doolittle drove to the last known address of where the suspect vehicle was registered to attempt to locate the vehicle. We checked the address 12815 Bexley Drive, Houston, Texas 77099 and knocked on the door of the residence but nobody was home and the vehicle was not there. We then began calling numerous phone numbers in an attempt to speak with the owner and left messages on several phones. We received a phone call from 832-461-6533 and it was the owner of the Buick Roadmaster and she advised the vehicle was at a different location. We then drove to the address given which was 8801 Braeswood in Houston and it was an apartment complex named Braes Court Apartments. We drove to the back of the apartment complex and observed the white Buick Roadmaster in front of the apartment complex. We then met with Laquisha Allen a b/f DOB [redacted] and her boyfriend Demonte Mitchell b/m DOB [redacted]. While speaking with Laquisha and Demonte they were very cooperative and advised we could do what we needed to do with the vehicle. Ranger Doolittle then filled out consent to search form and was signed at which time we began to look in the vehicle for any evidence. It is in my opinion that the vehicle may contain blood evidence from the murder in 2007. Ranger Doolittle then mixed a chemical named Blue Star which is to help look for blood evidence. Ranger Doolittle stated he did not see anything in the vehicle that would indicate any evidence. I then asked Laquisha and Demonte if they would allow me to tow the Buick and have it processed for evidence and again agreed to help with whatever we needed. The vehicle was left at the address due to not having means to tow it at the time and not knowing for sure the vehicle was not impounded from the 09-10-2007 accident. We then left the location and drove back to Conroe.

Ranger Doolittle uses the reliable BlueStar blood detection kit which uses a spray-on reagent followed by exposure to an alternative light source. It is the proper type of test to use in this case since it covers an entire area with spray as opposed to other methods that can only be used on specific spots or areas that are swabbed. "Ranger Doolittle stated he did not see anything in the vehicle that would indicate any evidence."

Rooney asks the owner for permission to process the car again. Most investigators would see no use in processing the car again since BlueStar was negative and it had been so long since the crime. But probably not all investigators so this too can be viewed as a reasonable action. No stone unturned and all that.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 5 of 63

These are pictures of the interior of the 1994 Buick when it was located 5 years after the crime. The spots and stains visible all over the interior show that the correct testing method for blood in this vehicle is BlueStar. It tested negative for blood by Texas Ranger Doolittle. Two weeks later, Rooney brings the car in for testing with the spot specific swab-and-test TMB method. The TMB blood test produces many more false positives than BlueStar.










For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 6 of 63

On 3-22-2013, Rooney had the 1994 Buick brought to the MCSO. CSI Rossi and CSI Ramirez processed the car for evidence. CSI Rossi and CSI Ramirez said the "vehicle contained several areas of interest where there was a positive reaction for blood evidence…" I could not find "Rossi and Ramirez's supplement" anywhere in the documents. Rossi and Ramirez say they have found blood evidence using TMB (tetramethylbenzidine), a reagent where a spot is swabbed and the swab is tested for blood. Again, this is all possible.

On 03-15-2013 I attempted numerous times to call the new owner of the Buick Roadmaster and the phone number stated it was disconnected.

On 03-22-2013 I drove to 12815 Bexley Drive, Houston Tx. 77031 to attempt to locate the vehicle again. As I arrived I observed Mr. Mitchell leaving and I was able to flag him down and speak with him. While speaking with Mr. Mitchell I asked if he would be willing to allow me to take the car and process it for evidence I this case. Mr. Mitchell stated yes and then offered to drive the vehicle to MCSO to have it processed. Mr. Mitchell then followed me to MCSO where the vehicle was parked in the crime scene sally port. Mr. Mitchell and his family were driven to Candy Cane Park while the vehicle was being processed. CSI Rossi and CSI Ramirez who work for MCSO began to process the vehicle for evidence. During the search process I was advised that the vehicle contained several areas of interest where there was a positive reaction for blood evidence located inside the vehicle (see Rossi's and Ramirez's supplement). The vehicle took longer than expected to process so I drove to Candy Cane Park and picked up Mr. Mitchell and his family and drove then back home to 12815 Bexley Drive. When I arrived back at MCSO CSI Ramirez asked if I would retrieve the seat covers to Brandon Brazel's mustang and bring them to her for processing. I then drove to the Willis Police Department where I retrieved the driver and passenger side seat covers from evidence along with the projectiles due to them being stapled to one of the seat covers. I then drove back to MCSO where I released the seat covers and the projectiles to Ramirez. I then stayed on location until Rossi and Ramirez were done processing the vehicle for evidence. I then assisted in placing the front seats back in the vehicle and bolted them back down. I was advised by Rossi she would contact me when all the evidence from the 1994 White Buick Roadmaster was ready to be picked up along with the seat covers and projectiles. I then left MCSO and went off duty.

Now, Rossi and Ramirez have found "blood evidence" in the 1994 Buick that belonged to Fred Lee in 2007 when the crime occurred. "MCSO CSI Ramirez asked if I (Rooney) would retrieve the seat covers to Brandon Brazel's mustang and bring them to her for processing." What possible reason is there to bring the seat covers from the victim's car in 2007 to where they are processing Fred Lee's car in 2013? Rooney retrieves both the driver and passenger seat covers from evidence and "released" them to Ramirez. These actions are patently wrong. There is no valid reason to bring these seat covers to the processing of Fred Lee's former 1994 Buick. Rossi says she will contact Rooney when everything was "ready to be picked up."

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 7 of 63

This is the Bode Case Submission Form for the "blood evidence" submitted to Bode from the 1994 Buick. It was filled out by Det. Duroy and signed by MCSO Captain Zenor. This case background statement is improper and instructs Bode what the MCSO wants to find creating obvious suspect bias. This isn't a sexual assault case where it may be necessary to eliminate the victim's DNA profile. This form should only have the evidence submitted and the known profiles to compare to any profiles found.

# Case Submission Form

Bode Technology
Part of GlobalOptions Group

Bode Case No (To be filled out by Bode): CCA1390-0101

**In order to process your DNA casework efficiently, this form must be filled out and sent along with the evidence. Prior to submitting a case, please call Customer Services 866-BODE-4-ID (866-263-3443).**

The Bode Technology Group
10430 Furnace Rd. Suite 107
Lorton, VA 22079
Phone: 703-646-9740
Fax: 703-646-9742
www.bodetech.com

**Submitting Agency Reference/Case No:** W07-1181 (Willis PD Case)

**Case Background:**

On 09/12/2007, Complainant / Victim, Brandon Glenn Brazel (W/M, DOB-[redacted], arrived in his blue 1997 Ford Mustang 02-door (Texas X49-RBR) on the Kroger's Parking lot (12466 I-45, Willis, Montgomery County, Texas, 77378). Unknown suspect arrived driving a white passenger car, parked next to victim, and entered the passenger side of victim's Mustang. Suspect then shot victim approx. five times with a large caliber weapon, killing victim. Suspect fled the scene in the white vehicle. On 09/12/2007, MCSO CSI Christine Ramirez processed the Mustang for evidence. A possible suspect was later developed (Fred Dexter Lee III (W/M, DOB-[redacted] and a vehicle (white 1994 Buick Roadmaster, VIN 1G4BN52P1RR431114) previously owned by Lee was processed on 3/22/2013, by MCSO CSI Celestina Rossi. NOTE- Gauze type material (Scent Pads) were utilized during the initial processing for possible future canine tracking. Now to be used as "Touch/Contact" DNA analysis. CONTINUED..

Specify platform (AB/Hitachi), kit (Co/Pro+, ID, PP16, PP16BIO, PPY, YFiler, miniFiler), and software (GS/GT, GMID) preferences. If no preference, check box for Analyst Discretion

LAB - PERFORM REQUESTED DNA TESTING IN CAPITAL MURDER CASE & MAKE COMPARISONS.

[X] Analyst Discretion

| **List Evidence Items*** (If needed, use Page 3 to include additional items or case information) Note: Descriptions may be reflected in Chain of Custody and Report | Please check the appropriate boxes for Pre-Screening and DNA Testing Requested | Permission to Consume (if necessary) |
|---|---|---|
| (125)-One evidence envelope w/ 2 swabs from carpet in trunk (94 Buick). Positive TMB | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (128/Same Large Envelope) - 2 swabs from rear floormat (94 Buick). Positive TMB | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (129/Same Large Envelope)-2 swabs, inside passenger seat bottom/flush w/driver seat (94 Buick | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (130/Same Large Envelope)-2 swabs, inside driver seat bottom flush w/ passenger seat (94 Buick)+TMB | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (131/Same Large Envelope)-1 swab from stain on passenger side of armrest (94 Buick). Positive TMB | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |

[X] Check if additional evidence items or testing instructions are listed on Page 3

* When submitting extracts, the reagent blanks must also be included. Please be sure to include the following information: Total Human Quant, Total Y Quant, Volume Remaining, and Extraction Control Names associated with samples.

**If STR data is obtained, will CODIS entry or search be requested?** [ ] Yes [X] No

(NOTE: Private Forensic DNA laboratories do not have access to enter or search samples in CODIS. If "yes" is marked, Bode will contact the appropriate CODIS laboratory Technical Leader prior to initiation of this case. Please be aware that this may increase the turnaround time.

I hereby certify that the information provided on this Case Submission Form is accurate to the best of my knowledge. I understand that I will be charged for services according to the fee schedule that I have received.

Print Name Bruce Zenor, Captain

Signature [signature]

**Please submit this completed form with the evidence. All evidence items must be shipped using a traceable carrier (i.e. FedEx, UPS, DHL, Priority Mail). Overnight shipping is recommended. The evidence should be shipped to:**

**ATTN: EVIDENCE DEPARTMENT**
**Bode Technology**
**10430 Furnace Rd. Suite 107**
**Lorton, VA 22079**

EBH 6-4-13

Page 2

61

Beginning of the list of swabs from the 1994 Buick by MCSO. Four are marked "+TMB". Permission to consume is given

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 8 of 63

Page 2 of the submission form shows 6 additional items from the 1994 Buick for a total of 11 items. Again, permission to consume is given for all items.

# Case Submission Form

Bode Technology

The Bode Technology Group
10430 Furnace Rd. Suite 107
Lorton, VA 22079
Phone: 703-646-9740
Fax: 703-646-9742
www.bodetech.com

**Bode Case No (To be filled out by Bode):** CCAB90-010

**In order to process your DNA casework efficiently, this form must be filled out and sent along with the evidence. Prior to submitting a case, please call Customer Services 866-BODE-4-ID (866-263-3443).**

| **Additional Evidence Items*** Note: Descriptions may be reflected in Chain of Custody and Report | Please check the appropriate boxes for Pre-Screening and DNA Testing Requested | Permission to Consume (if necessary) |
|---|---|---|
| (132)-One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (133/Same Large Envelope)-2 swabs from front of driver seat bottom (94 Buick). | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (136/Same Large Envelope)-2 swabs, driver side floor between carpet/molding (94 Buick). | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (134)-One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick). | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (135/Same Large Envelope)-1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick). | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (138)-One evidence envelope w/ 2 swabs (touch/ contact DNA) from passenger seat cover (94 Buick). | Pre-Screen: [X] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (63)-One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car). | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (64)-One evid. envel. w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car). | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (53A)-One evidence envelope w/ 1 swab from straw in Burger King cup (Console / Victim's car). | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| (48A)-One evid. envel. w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car). | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [X] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [X] Yes [ ] No |
| ** Electropherograms Included for Comparison ** | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [ ] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [ ] Yes [ ] No |
| | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [ ] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [ ] Yes [ ] No |
| | Pre-Screen: [ ] Blood [ ] Semen [ ] Saliva [ ] Hair<br>DNA Testing: [ ] STR [ ] miniSTR [ ] Y-STR [ ] mtDNA | [ ] Yes [ ] No |

* When submitting extracts, the reagent blanks must also be included. Please be sure to include the following information: Total Human Quant, Total Y Quant, Volume Remaining, and Extraction Control Names associated with samples.

**Additional Case Information:**

CONTINUED: Fred Dexter Lee III is a suspect in MCSO Capital Murder 07A012779, in which a Known DNA Reference Sample for Lee was collected (DPS Lab # L2H-176340). A copy of Lee's electropherogram ("F.D. Lee") was obtained from the Texas DPS Lab, along with electropherograms in the Willis PD case (Victim "BB", & three unknown DNA profiles from evidence) under DPS Lab # L2H-178189. It is possible that Fred Dexter Lee III is responsible for both homicides. A consulting / case review fee is included regarding the comparison of outer lab (DPS) profiles. The MCSO Cold Case Squad is assisting the Willis PD with this case, including evidence submission and payment of services. The MCSO will handle all submissions to DPS regarding any CODIS uploads. NOTE - The submissions involving TWO swabs are considered one sample. The swabs would have been held together and utilized as one swab for stability reasons. T. Duroy, Det.

EBH 6-4-13 60

Page 3

Four items from the victim's Mustang that were recovered in 2007 are submitted also. However, the swab from the passenger's and driver's seat covers from the victim's 1997 Mustang are not listed. Where are the processed driver and passenger seat cover swabs from the victim's Mustang that were processed by Rossi and Ramirez on 3/22/2013?

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 9 of 63

Here is the evidence list as seen on page 1 of the Bode lab report dated June 6, 2013. The 11 items submitted from the 1994 Buick are listed as are the 4 items from the Mustang. Again, neither seat cover is listed. The focus is now on the 5 samples indicated below. These were the only items tested in this report, the remaining 10 items from the 1994 Buick were not tested at this time. Why were only these items tested?

Bode Technology

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

**Forensic Case Report**
**June 6, 2013**

**To:**
Detective Thomas Duroy
Montgomery County Sheriff's Office
1 Criminal Justice Drive
Conroe, TX 77301

**Bode Case #**: CCA1390-0101
**Agency Case #**: W07-1181

**List of evidence received on May 10, 2013 for possible DNA analysis:**

| Bode Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1390-0101-E01 | 125 | Labeled as "One evidence envelope w/ 2 swabs from carpet in trunk (94 Buick). Positive TMB" |
| CCA1390-0101-E02 | 128 | Labeled as "2 swabs from rear floormat (94 Buick). Positive TMB" |
| CCA1390-0101-E03 | 129 | Labeled as "2 swabs, inside passenger seat bottom/flush w/ driver seat (94 Buick)" |
| CCA1390-0101-E04 | 130 | Labeled as "2 swabs, inside driver seat bottom flush w/ passenger seat (94 Buick) + TMB" |
| CCA1390-0101-E05 | 131 | Labeled as "1 swab from stain on passenger side of armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E06 | 132 | Labeled as "One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E07 | 133 | Labeled as "2 swabs from front of driver seat bottom (94 Buick)" |
| CCA1390-0101-E08 | 136 | Labeled as "2 swabs, driver side floor between carpet/molding (94 Buick)" |
| CCA1390-0101-E09 | 134 | Labeled as "One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick)" |
| CCA1390-0101-E10 | 135 | Labeled as "1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick)" |
| CCA1390-0101-E11 | 138 | Labeled as "One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick)" |
| CCA1390-0101-E12 | 63 | Labeled as "One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car)" |
| CCA1390-0101-E13 | 64 | Labeled as "One evid. envel. w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car)" |
| CCA1390-0101-E14 | 53A | Labeled as "One evidence envelope w/ 1 swab from straw in Burger King cup (Console/Victim's car)" |
| CCA1390-0101-E15 | 48A | Labeled as "One evid. envel. w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car)" |

Page 1 of 5

82/82

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 10 of 63

Page 2 of the report shows the profiles that were provided to compare with any evidence profiles found. The 3 unknown profiles were obtained from a car that was shown not to be involved in the case. The profiles of four known suspects were not provided for comparison. The DNA profile of one of these suspects was found under the victim's fingernails and on a blood smear on his pants. This evidence was ignored by Rooney. Read the entire report below if needed but we are going to specifically look at items 2, 3, and 4 below; E11 is from the seat cover of the 1994 Buick, E12 is from a scent pad taken from the Mustang front passenger seat, and E13 is a different scent pad from the Mustang passenger seat respectively. All three are mixtures with at least one male contributor.

None of the swabs obtained from the 1994 Buick tested positive for blood. Ranger Doolittle's initial conclusion was correct; there was no blood evidence in the 1994 Buick.

**Bode Case #**: CCA1390-0101
**Agency Case #**: W07-1181

**DNA profiles provided by Montgomery County** ... **purposes:**

| Agency Sample ID | Agency Description |
|---|---|
| 01-1A1 B.B. | Victim ("B.B.") Brandon Brazel |
| 114_F.D.LEE | Suspect Fred Dexter Lee III |
| 02-1E7A | Unknown DNA Profile |
| 02-1G1A | Unknown Profile |
| 02-1I1B-RA | Unknown Profile |

**Forensic Biology Results:**

1. No blood was detected in the following samples:

   CCA1390-0101-E01
   CCA1390-0101-E02
   CCA1390-0101-E03
   CCA1390-0101-E04
   CCA1390-0101-E05
   CCA1390-0101-E06
   CCA1390-0101-E07
   CCA1390-0101-E08
   CCA1390-0101-E09
   CCA1390-0101-E10
   CCA1390-0101-E11

**DNA Processing, Results, Conclusions, and Statistics:**

The evidence was processed for DNA typing by analysis of the 13 CODIS Short Tandem Repeat loci, the D2S1338 locus, the D19S433 locus, and the Amelogenin locus using the Applied Biosystems AmpFLSTR® Identifiler® Plus kit.

1. DNA profiles were provided for agency samples 01-1A1 B.B. (Brandon Brazel), 114_F.D.LEE (Fred Dexter Lee III), 02-1E7A, 02-1G1A, and 02-1I1B-RA.

2. The DNA profile obtained from sample CCA1390-0101-E11 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E11.

3. The DNA profile obtained from sample CCA1390-0101-E12 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E12.

4. The DNA profile obtained from sample CCA1390-0101-E13 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the possibility of allelic drop out, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E13.



81

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 11 of 63

Page 3 shows the results of the remaining 2 items from the Mustang. One item had the victim's profile (straw from drink cup) and the other item (Hi-C juice box) had an unknown major male profile. Analysis of this unknown profile shows it is likely the victim's son.

**Bode Case #:** CCA1390-0101
**Agency Case #:** W07-1181

**Date:** June 6, 2013

**DNA Processing, Results, Conclusions, and Statistics (continued):**

5. The partial DNA profile obtained from sample CCA1390-0101-E14 is consistent with a male contributor (Male 1).

   The partial DNA profile obtained from sample CCA1390-0101-E14 matches the DNA profile provided for agency sample 01-1A1 B.B. (Brandon Brazel).

   The probability of randomly selecting an unrelated individual with this DNA profile at 10 of 15 loci tested is:

   1 in 1.2 trillion in the US Caucasian population
   1 in 2.8 trillion in the US African American population
   1 in 400.0 billion in the US Hispanic population

   Therefore, within a reasonable degree of scientific certainty, Brandon Brazel (01-1A1 B.B.) is the source of the partial DNA profile obtained from the sample noted above.

   The following loci were not used in the statistical calculation due to no results being obtained: D7S820, CSF1PO, D2S1338, TPOX and D18S51.

6. The DNA profile obtained from sample CCA1390-0101-E15 is consistent with a mixture of at least two individuals including a major male contributor (Male 2).

   The individuals associated with agency samples 01-1A1 B.B. (Brandon Brazel) and 114_F.D.LEE (Fred Dexter Lee III) and the profiles provided for agency samples 02-1E7A, 02-1G1A, and 02-1I1B-RA are excluded as possible contributors of the major component DNA profile obtained from sample CCA1390-0101-E15.

   Due to the possibility of allelic drop out, no conclusions can be made on the minor component alleles obtained from sample CCA1390-0101-E15.

See **Table 1** for summary of alleles reported for each sample.

**Notes:**
1. Testing performed for this case is in compliance with accredited procedures under the laboratory's ISO/IEC 17025 accreditation issued by ASCLD/LAB and ANSI-ASQ National Accreditation Board/FQS. Refer to certificates and scopes of accreditation for certificate numbers ALI-231-T and AT-1672, respectively.
2. Any reference to body fluids in evidence descriptions are based on the written descriptions of the samples by the submitting agency.
3. The DNA extracts and submitted evidence will be returned to the Montgomery County Sheriff's Office.
4. Samples 02-1E7A, 02-1G1A, and 02-1I1B-RA were analyzed according to Bode's SOP using a 250 RFU stochastic threshold and a 100 RFU analytical threshold.

Report submitted by,

Emily Herren

Emily Herren, MFS
Forensic Biology/DNA Analyst II

Page 3 of 5

80

Notes 3 and 4 illustrate problems with Bode. In note 3, why are the extracts being sent back to MCSO? MCSO has no business with DNA extracts. Do they maintain a library of known extracts so they can just plant DNA evidence when needed? In note 4, it's not scientifically valid to use their own thresholds on another lab's data. They could use the manufacturer's recommended thresholds but not ones validated on their own equipment.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 12 of 63

Page 4 of the report contains the tables that show the STR DNA alleles found on the evidence items at each locus. The table with the results of E11 (seat cover 1994 Buick) and E12 (scent pad from victim's 1997 Mustang E13) is below (top). It shows a result that was not possible. I have labeled the columns below to show what is wrong. The profiles obtained from item E11 and item E12 are from the same DNA source. That is, the swabs were not obtained from two different automobiles more than five years apart. They match almost exactly. E13 is from the same source also but has less DNA or is degraded. The odds of these two mixtures of 3 or more persons matching here is similar to the odds of winning several lotteries. If this happened by chance, DNA testing does not work.

Obtained from 1994 Buick seat cover in 2013.

Obtained from victim's Mustang passenger seat (scent pads) in 2007.

Bode

Agency Case #: W07-118

Table 1: Analysis of Sh... Tandem Repeat Loci

| Locus | CCA1390-0101-E11a1 | CCA1390-0101-E12a1 | CCA1390-0101-E13a1 |
|---|---|---|---|
| D8S1179 | (9), 12, (13), (15), (16) | (9), 12, (13), (15), (16) | 9, 12, 13, (16) |
| D21S11 | 29, 30, (32.2) | 29, 30, (32.2) | 29, 30 |
| D7S820 | 8, 9, 10, (12) | 8, 9, 10, 12 | 8, --- |
| CSF1PO | 11, (12) | 11, (12) | 11, --- |
| D3S1358 | 14, 15, 16, (17), (18) | 14, 15, 16, (17), (18) | (14), 15, 16, (17), 18 |
| TH01 | (6), 7, (8), (9), (9.3) | (6), 7, (9), (9.3) | (6), 7, (8), (9.3) |
| D13S317 | (8), 9, (10), 11, 12 | (8), 9, (10), 11, 12 | (8), (9), 11, (12) |
| D16S539 | (11), 12, 13, (14) | (11), (12), 13, (14) | 12, 13 |
| D2S1338 | 17, 19, 21, (22), (24) | 17, 19, 21, 22 | No Results |
| D19S433 | 13, 14 | 13, 14 | 13, 14 |
| vWA | (14), 17, (18) | (14), 17, (18) | 17, (18) |
| TPOX | 8, 9, 10, 11 | 8, 9, 10, (11) | (8), 9, 11 |
| D18S51 | (13), (14), 15, 16, 17 | (13), 15, 16, 17 | 15, 16, 17 |
| Amelogenin | X, (Y) | X, (Y) | X, (Y) |
| D5S818 | (9), (11), 12 | (9), (11), 12 | (9), (11), 12 |
| FGA | 19, (20), (21), (22), 23, 24, (26) | 19, (20), (21), (22), 23, 24, (26) | (19), (20), (21), 23, 24 |

( ) = minor allele --- = possible additional alleles

Table 1: Analysis of Short Tandem Repeat Loci (continued)

| Locus | CCA1390-0101-E14a1 | CCA1390-0101-E15a1 | CCA1390-0101-E15a1 Major Component | Unknown 02-1E7A* | Unknown 02-1G1A* |
|---|---|---|---|---|---|
| D8S1179 | 9, 12 | (9), 12, 13 | 12, 13 | 13, 15 | 13, 15 |
| D21S11 | 29, 30 | (29), 30, (32.2) | Inconclusive | 29, 31 | 29, 30 |
| D7S820 | No Results | 8, --- | 8, --- | 10, 10 | No Results |
| CSF1PO | No Results | No Results | No Results | 10, 13 | No Results |
| D3S1358 | 14, 16 | (14), (15), 16, 17, (18) | 16, 17 | 15, 16 | 15, 18 |
| TH01 | 7, 7 | 7, 9 | 7, 9 | 9, 9.3 | 6, 7 |
| D13S317 | 9, 11 | 10, 11, (12) | 10, 11 | 11, 13 | 11, 13 |
| D16S539 | 13, --- | 11, 12 | 11, 12 | {10, 11} | 11, --- |
| D2S1338 | No Results | 19, --- | 19, --- | 20, 21 | No Results |
| D19S433 | 13, 14 | 13, 14 | 13, 14 | 13, 13 | 14, 14 |
| vWA | 17, 17 | 14, 17 | 14, 17 | 16, 17 | 17, 17 |
| TPOX | No Results | 8, 12 | Inconclusive | 8, 8 | No Results |
| D18S51 | No Results | 15, 17 | Inconclusive | 18, 19 | No Results |
| Amelogenin | X, Y | X, Y | X, Y | X, X | X, X |
| D5S818 | 12, 12 | (11), 12 | 12, 12 | 11, 13 | 11, 12 |
| FGA | 23, 24 | 20, 24 | 20, 24 | 20, 22 | 21, --- |

( ) = minor allele --- = possible additional alleles { } = imbalanced alleles
* profile provided by Montgomery County Sheriff's Office

79

Page 4 of 5

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 13 of 63

Page 5 contains the allele tables of Fred Lee, Brandon Brazel, and one of the unknown profiles mentioned previously.

**Bode Case #:** CCA1390-0101
**Agency Case #:** W07-1181

**Date:** June 6, 2013

**Table 1: Analysis of Short Tandem Repeat Loci (continued)**

| Locus | Unknown 02-1I1B-RA* | 01-1A1 B.B. Victim ("B.B.") Brandon Brazel* | 114_F.D.LEE Suspect, Fred Dexter Lee III* |
|---|---|---|---|
| D8S1179 | 12, 14 | 9, 12 | 12, 16 |
| D21S11 | 27, 28 | 29, 30 | 28, 30 |
| D7S820 | 8, 10 | 8, 10 | 10, 13 |
| CSF1PO | 9, 10 | 11, 11 | 11, 14 |
| D3S1358 | 16, 17 | 14, 16 | 14, 17 |
| TH01 | 7, 10 | 7, 7 | 7, 9.3 |
| D13S317 | 11, 12 | 9, 11 | 9, 13 |
| D16S539 | 11, 12 | 12, 13 | 11, 13 |
| D2S1338 | 19, 19 | 19, 21 | 17, 17 |
| D19S433 | 14, 14.2 | 13, 14 | 13, 15 |
| vWA | 15, 15 | 17, 17 | 18, 19 |
| TPOX | 9, 11 | 8, 9 | 8, 8 |
| D18S51 | 16, 19 | 15, 16 | 10, 12 |
| Amelogenin | X, Y | X, Y | X, Y |
| D5S818 | 12, 14 | 12, 12 | 11, 12 |
| FGA | 21, 22 | 23, 24 | 22, 23 |

* profile provided by Montgomery County Sheriff's Office

78



For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 14 of 63

The electropherograms of items E11 and E12 confirmed that these two DNA mixtures are from the same source. The rows of each corresponding set of loci are presented below to show how amazingly similar they are. These look like excellent repeat injections from a method validation.







For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 15 of 63







For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 16 of 63

The swabs marked as being from the victim's Mustang in 2007 and the swabs marked as from the 1994 Buick in 2013 are convincingly from the same source. The question is, were both from the Mustang or were both from the 1994 Buick. Which scenario would implicate Fred Lee in the crime? The swabs from the 1994 Buick tested positive for blood when tested by Rossi and Ramirez but Ranger Doolittle had previously stated there was no evidence of blood in the car. Bode confirmed there was no blood. Did Rossi and Ramirez falsely say they found blood evidence in the 1994 Buick only so they had a reason to submit swabs from Fred Lee's former car? Why? It is an old trick for a testifying LEO to state they tested evidence and it was positive for blood. Even though sometime later the DNA expert says it was negative during their testimony, it is not emphasized and the jury only remembers the officer that said is was positive for blood. If a swab from Fred Lee's 1994 Buick came back with Brandon Brazel's DNA profile, Rooney would say he was correct when he predicted blood from the 2007 crime would be found in Fred Lee's car. It appeared Rooney and Rossi had swabbed the victim's seat covers with the swab they said was from the 1994 seat cover and the scent pads. This is why the data is identical. Is Brandon Brazel's DNA profile within the mixture found in nearly identical profiles?

| Locus | Unknown 02-1I1B-RA* | 01-1A1 B.B. Victim ("B.B.") Brandon Brazel* | 114_F.D.LEE Suspect, Fred Dexter Lee III* |
|---|---|---|---|
| D8S1179 | 12, 14 | 9, 12 | 12, 16 |
| D21S11 | 27, 28 | 29, 30 | 28, 30 |
| D7S820 | 8, 10 | 8, 10 | 10, 13 |
| CSF1PO | 9, 10 | 11, 11 | 11, 14 |
| D3S1358 | 16, 17 | 14, 16 | 14, 17 |
| TH01 | 7, 10 | 7, 7 | 7, 9.3 |
| D13S317 | 11, 12 | 9, 11 | 9, 13 |
| D16S539 | 11, 12 | 12, 13 | 11, 13 |
| D2S1338 | 19, 19 | 19, 21 | 17, 17 |
| D19S433 | 14, 14.2 | 13, 14 | 13, 15 |
| vWA | 15, 15 | 17, 17 | 18, 19 |
| TPOX | 9, 11 | 8, 9 | 8, 8 |
| D18S51 | 16, 19 | 15, 16 | 10, 12 |
| Amelogenin | X, Y | X, Y | X, Y |
| D5S818 | 12, 14 | 12, 12 | 11, 12 |
| FGA | 21, 22 | 23, 24 | 22, 23 |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 17 of 63

Brandon Brazel's entire DNA profile in located within the mixtures that were identified as being from each of both cars, five years apart. Brandon Brazel's alleles are underlined in red below. Fred Lee's alleles are missing from many of the loci in the mixtures so he is excluded.

| Locus | Unknown 02-1I1B-RA* | 01-1A1 B.B. Victim ("B.B.") Brandon Brazel* | 114_F.D.LEE Suspect, Fred Dexter Lee III* |
|---|---|---|---|
| D8S1179 | 12, 14 | 9, 12 | 12, 16 |
| D21S11 | 27, 28 | 29, 30 | 28, 30 |
| D7S820 | 8, 10 | 8, 10 | 10, 13 |
| CSF1PO | 9, 10 | 11, 11 | 11, 14 |
| D3S1358 | 16, 17 | 14, 16 | 14, 17 |
| TH01 | 7, 10 | 7, 7 | 7, 9.3 |
| D13S317 | 11, 12 | 9, 11 | 9, 13 |
| D16S539 | 11, 12 | 12, 13 | 11, 13 |
| D2S1338 | 19, 19 | 19, 21 | 17, 17 |
| D19S433 | 14, 14.2 | 13, 14 | 13, 15 |
| vWA | 15, 15 | 17, 17 | 18, 19 |
| TPOX | 9, 11 | 8, 9 | 8, 8 |
| D18S51 | 16, 19 | 15, 16 | 10, 12 |
| Amelogenin | X, Y | X, Y | X, Y |
| D5S818 | 12, 14 | 12, 12 | 11, 12 |
| FGA | 21, 22 | 23, 24 | 22, 23 |

Obtained from 1994 Buick seat cover in 2013.

Obtained from victim's Mustang passenger seat (scent pad) in 2007.

| Locus | CCA1390-0101-E11a1 | CCA1390-0101-E12a1 |
|---|---|---|
| D8S1179 | (9), 12, (13), (15), (16) | (9), 12, (13), (15), (16) |
| D21S11 | 29, 30, (32.2) | 29, 30, (32.2) |
| D7S820 | 8, 9, 10, (12) | 8, 9, 10, 12 |
| CSF1PO | 11, (12) | 11, (12) |
| D3S1358 | 14, 15, 16, (17), (18) | 14, 15, 16, (17), (18) |
| TH01 | (6), 7, (8), (9), (9.3) | (6), 7, (9), (9.3) |
| D13S317 | (8), 9, (10), 11, 12 | (8), 9, (10), 11, 12 |
| D16S539 | (11), 12, 13, (14) | (11), (12), 13, (14) |
| D2S1338 | 17, 19, 21, (22), (24) | 17, 19, 21, 22 |
| D19S433 | 13, 14 | 13, 14 |
| vWA | (14), 17, (18) | (14), 17, (18) |
| TPOX | 8, 9, 10, 11 | 8, 9, 10, (11) |
| D18S51 | (13), (14), 15, 16, 17 | (13), 15, 16, 17 |
| Amelogenin | X, (Y) | X, (Y) |
| D5S818 | (9), (11), 12 | (9), (11), 12 |
| FGA | 19, (20), (21), (22), 23, 24, (26) | 19, (20), (21), (22), 23, 24, (26) |

Every one of Brandon Brazel's alleles (underlined in red) are present in the mixtures above. Even the data bottleneck at locus D19S433 with only 2 alleles has Brazel's alleles. The bottleneck at CSF1PO also has his two 11 alleles.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 18 of 63

At this point, the evidence is pretty strong that the Mustang seat covers were swabbed and submitted as being from the 1994 Buick. However, one more thing bothered me. For no apparent reason, the samples were processed by Bode out of order. As mentioned previously, only samples E11 – E15 were processed at this time. These are the fraudulent E11 (seat cover from 1994 Buick) and the 4 items from the Mustang. If samples are processed out of the order they are numbered, there must be a legitimate reason. One such reason might be to not do the DNA testing on items that tested negative for blood by Bode. However, if this was the reason, E11 would not have been processed since it tested negative for blood. Yet it was processed along with the Mustang items.

Bode Technology.

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

**Forensic Case Report**
**June 6, 2013**

To:
Detective Thomas Duroy
Montgomery County Sheriff's Office
1 Criminal Justice Drive
Conroe, TX 77301

**Bode Case #**: CCA1390-0101
**Agency Case #**: W07-1181

List of evidence received on **May 10, 2013** for possible DNA analysis:

| Bode Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1390-0101-E01 | 125 | Labeled as "One evidence envelope w/ 2 swabs from carpet in trunk (94 Buick). Positive TMB" |
| CCA1390-0101-E02 | 128 | Labeled as "2 swabs from rear floormat (94 Buick). Positive TMB" |
| CCA1390-0101-E03 | 129 | Labeled as "2 swabs, inside passenger seat bottom/flush w/ driver seat (94 Buick)" |
| CCA1390-0101-E04 | 130 | Labeled as "2 swabs, inside driver seat bottom flush w/ passenger seat (94 Buick) + TMB" |
| CCA1390-0101-E05 | 131 | Labeled as "1 swab from stain on passenger side of armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E06 | 132 | Labeled as "One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E07 | 133 | Labeled as "2 swabs from front of driver seat bottom (94 Buick)" |
| CCA1390-0101-E08 | 136 | Labeled as "2 swabs, driver side floor between carpet/molding (94 Buick)" |
| CCA1390-0101-E09 | 134 | Labeled as "One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick)" |
| CCA1390-0101-E10 | 135 | Labeled as "1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick)" |
| CCA1390-0101-E11 | 138 | Labeled as "One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick)" |
| CCA1390-0101-E12 | 63 | Labeled as "One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car)" |
| CCA1390-0101-E13 | 64 | Labeled as "One evid. envel. w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car)" |
| CCA1390-0101-E14 | 53A | Labeled as "One evidence envelope w/ 1 swab from straw in Burger King cup (Console/Victim's car)" |
| CCA1390-0101-E15 | 48A | Labeled as "One evid. envel. w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car)" |

Page 1 of 5

82/82

Only the 5 items shown here were initially processed. I could not identify a legitimate reason as to why. I found no valid instructions from the MCSO or other reasons for Bode to do this. There is documentation of the MCSO giving Bode instructions to complete the testing on the ten items that were skipped in this report. The report for the first ten items was issued 3 weeks later.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 19 of 63

Here is page one of the second lab report with the initially skipped samples that was issued 3 weeks after the initial report. It contains the partial list of evidence not processed in the first report that is included in this report.

W07-1181

Bode Technology

10430 Furnace Road, Suite 107
Lorton, VA 22079
Phone: 703-646-9740

**Supplemental Forensic Case Report**
**June 27, 2013**

**To:**
Detective Thomas Duroy
Montgomery County Sheriff's Office
1 Criminal Justice Drive
Conroe, TX 77301

**Bode Case #:** CCA1390-0101
**Agency Case #:** W07-1181

**Partial list of evidence received on May 10, 2013 for possible DNA analysis:**

| Bode Sample Name | Agency Sample ID | Agency Description |
|---|---|---|
| CCA1390-0101-E01 | 125 | Labeled as "One evidence envelope w/ 2 swabs from carpet in trunk (94 Buick). Positive TMB" |
| CCA1390-0101-E02 | 128 | Labeled as "2 swabs from rear floormat (94 Buick). Positive TMB" |
| CCA1390-0101-E03 | 129 | Labeled as "2 swabs, inside passenger seat bottom/flush w/ driver seat (94 Buick)" |
| CCA1390-0101-E04 | 130 | Labeled as "2 swabs, inside driver seat bottom flush w/ passenger seat (94 Buick) + TMB" |
| CCA1390-0101-E05 | 131 | Labeled as "1 swab from stain on passenger side of armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E06 | 132 | Labeled as "One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB" |
| CCA1390-0101-E07 | 133 | Labeled as "2 swabs from front of driver seat bottom (94 Buick)" |
| CCA1390-0101-E08 | 136 | Labeled as "2 swabs, driver side floor between carpet/molding (94 Buick)" |
| CCA1390-0101-E09 | 134 | Labeled as "One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick)" |
| CCA1390-0101-E10 | 135 | Labeled as "1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick)" |

**DNA profiles previously provided by Montgomery County Sheriff's Office on May 10, 2013 for comparison purposes:**

| Agency Sample ID | Agency Description |
|---|---|
| 01-1A1 B.B. | Victim ("B.B.") Brandon Brazel |
| 114_F.D.LEE | Suspect Fred Dexter Lee III |
| 02-1E7A | Unknown DNA Profile |
| 02-1G1A | Unknown Profile |
| 02-1I1B-RA | Unknown Profile |

Page 1 of 6

Rec 7-17-13
T. Duroy
FedEx



For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 20 of 63

The samples were done out of order on instructions from MCSO according to the notes on the second lab report.

**Bode Case #:** CCA1390-0101 **Date:** June 27, 2013
**Agency Case #:** W07-1181

**DNA Processing, Results, and Conclusions (continued):**

Due to the possibility of allelic drop out, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E07.

9. The DNA profile obtained from sample CCA1390-0101-E08 is consistent with a mixture of at least two individuals including at least one male contributor.

   The individuals associated with agency samples 01-1A1 B.B. (Brandon Brazel) and 114_F.D.LEE (Fred Dexter Lee III) and the profiles provided for agency samples 02-1E7A, 02-1G1A, and 02-1I1B-RA are excluded as possible contributors to the mixture DNA profile obtained from sample CCA1390-0101-E08.

10. No DNA profile was obtained from sample CCA1390-0101-E09.

11. The DNA profile obtained from sample CCA1390-0101-E10 is consistent with a mixture of at least two individuals including a major male contributor.

    The individuals associated with agency samples 01-1A1 B.B. (Brandon Brazel) and 114_F.D.LEE (Fred Dexter Lee III) and the profiles provided for agency samples 02-1E7A, 02-1G1A, and 02-1I1B-RA are excluded as possible contributors of the major component DNA profile obtained from sample CCA1390-0101-E10.

    Due to the possibility of allelic drop out, no conclusions can be made on the minor alleles present in sample CCA1390-0101-E10.

See **Table 1** for summary of alleles reported for each sample.

**Notes:**
1. Testing performed for this case is in compliance with accredited procedures under the laboratory's ISO/IEC 17025 accreditation issued by ASCLD/LAB and ANSI-ASQ National Accreditation Board/FQS. Refer to certificates and scopes of accreditation for certificate numbers ALI-231-T and AT-1672, respectively.
2. Any reference to body fluids in evidence descriptions are based on the written descriptions of the samples by the submitting agency.
3. The DNA extracts and submitted evidence will be returned to the Montgomery County Sheriff's Office.
4. Samples 02-1E7A, 02-1G1A, and 02-1I1B-RA were analyzed according to Bode's SOP using a 250 RFU stochastic threshold and a 100 RFU analytical threshold.
5. A supplemental report was issued due to the request by the client for additional testing. See original report dated June 6, 2013.

Report submitted by,

Emily Herren

Emily Herren, MFS
Forensic Biology/DNA Analyst II



For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 21 of 63

This phone contact form is the only document I found that addresses this issue. Det. Duroy calls and tells Emily Herren to do samples E01 – E10. Still does not account for processing E11 in the first batch but does give a reason that does not fit. Not sure of importance if any.

# Phone Contact Form

**Bode Technology**

Case Number/Subject: CCA1390-0101 Date: 6/21/2013

_x_ Incoming call

____ Outgoing call

| Person calling | Organization | Phone Number |
|---|---|---|
| Thomas Duroy | Montgomery County Sheriff's Office | 281-297-6507 |

| Receiver of call | Organization | Phone Number |
|---|---|---|
| Emily Herren | Bode | 703-646-9801 |

Notes:

Det. Duroy called and asked me to continue with DNA testing on items –E01 through –E10 even though they screened negative for blood.

50

Document: BT00070 - Phone Contact
Revision: 3
Effective: 11/19/2010 4:30:00 PM

EBH
7.11.13

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 22 of 63

These are the notes made by Bode analyst Emily Herren as she processed the evidence received from the MCSO. The description of each item is given as she opens each envelope. The items that are tested for blood are done now and the result given (PH-). Each of the first ten items are marked "Not processed further at this time" Items 11-15, including the swabs labelled as being from Fred Lee's 1994 Buick (suspected to actually be from the victim's 1997 Mustang seat cover) and the scent pad that its profile matches plus the other items from the victim's car, are processed out of order. Not testing items 1 – 11 could make sense since these tested negative for blood. This was not the case however. Item E11 only was processed the remaining 4 items. This may sound minor but in a laboratory, processing items out of sequence only occurs with a valid reason.

CCA1390-0101

Bode Technology

| | | | |
|---|---|---|---|
| CCA1390-0101-E07 | | Herren, Emily | 5/28/2013 10:16 AM |
| | Envelope sealed and labeled in part "133...2 swabs collected from front of driver seat bottom", containing two swabs with grey staining. Both swabs PH(-). Not processed further at this time. | Herren, Emily | 5/28/2013 11:24 AM |
| CCA1390-0101-E08 | | Herren, Emily | 5/28/2013 10:17 AM |
| | Envelope sealed and labeled in part "136...swabs collected from front of driver side between carpet & door molding", containing two swabs with brown staining. Both swabs PH(-). Not processed further at this time. | Herren, Emily | 5/28/2013 11:29 AM |
| CCA1390-0101-E09 | | Herren, Emily | 5/28/2013 10:17 AM |
| | Envelope sealed and labeled in part "134...Cutting from carpet under driver seat", containing one blue carpet square ~8.0 x 9.0 cm in size with one area of faint brown staining previously circled and labeled #11 by non-Bode analyst. Light brown staining PH(-). Not processed further at this time. | Herren, Emily | 5/28/2013 11:36 AM |
| CCA1390-0101-E10 | | Herren, Emily | 5/28/2013 10:18 AM |
| | Envelope sealed and labeled in part "135...cutting from carpet driver side on drive shaft hump", containing one blue carpet square ~6.0 x 7.0 cm in size previously labeled #12 by a non-Bode analyst. Streak of brown staining/debris along one side of square PH(-). Area of faint brown staining below the "2" PH(-). Area of faint brown staining above the "1" PH(-). Not processed further at this time. | Herren, Emily | 5/28/2013 11:43 AM |
| CCA1390-0101-E11 | | Herren, Emily | 5/28/2013 10:19 AM |
| | Outer envelope sealed and labeled in part "W07-1181 Exh# 138". Inner envelope sealed and labeled in part "138...2 swabs collected from passenger seat cover", containing two swabs with grey staining. Both swabs PH(-). | Herren, Emily | 5/28/2013 11:56 AM |
| CCA1390-0101-E11a | | | |
| *CCA1390-0101-E11a1* | Consumed and combined swabs (DNA). | Herren, Emily | 5/28/2013 11:57 AM |
| CCA1390-0101-E12 | | Herren, Emily | 5/28/2013 10:19 AM |
| | Outer envelope sealed and labeled in part "Exh #63". Inner ziplock bag unsealed but closed, and labeled in part "Scent Pad collected from front passenger seat", containing two gauze pads stuck together with grey discoloration on one side. | Herren, Emily | 5/28/2013 12:04 PM |
| CCA1390-0101-E12a | | | |
| *CCA1390-0101-E12a1* | Scraped side of gauze containing grey discoloration. Consumed ~50% of surface area sampled (DNA). | Herren, Emily | 5/28/2013 12:06 PM |
| CCA1390-0101-E13 | | Herren, Emily | 5/28/2013 10:20 AM |
| | Outer envelope sealed and labeled in part "Exh# 64". Inner ziplock bag closed, but not sealed, labeled in part "Scent Pad collected from front passenger seat - back", containing two gauze pads stuck together with grey staining on one side of one pad. | Herren, Emily | 5/28/2013 12:13 PM |

These processing notes also reveal that the scent pads arrived in unsealed Ziplock bags by Bode. Now, the scent pad from the passenger seat of the victim's Mustang along with the suspected mismarked evidence swabs have questions regarding their pedigree.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 23 of 63

**Summary – Initial Indications that DNA Evidence Was Planted.**

I presented these findings to the defense team at a meeting on 8/7/2018. At this time it was clear to me and everyone else on the team that the Rooney, Rossi, and Ramirez had attempted to plant DNA evidence to implicate Fred Lee in the murder of Brandon Brazel. Below is a list of the reasons that, when taken in the aggregate, show evidence tampering did occur.

1) On 3/8/2013, Rooney located Fred Lee's car five-and-a-half years after the crime and had Texas Ranger Doolittle, an experienced user of BlueStar, test the car for blood evidence. Rooney's report states "Ranger Doolittle stated he did not see anything in the vehicle that would indicate any evidence." Rooney had the car brought to the MCSO anyway two weeks later on 3/22/2013 so Rossi and Ramirez could test it for blood again themselves.

2) After Rossi and Ramirez did find blood evidence in the car, Ramirez sends Rooney to the Willis Police Department evidence room to get the two untested seat covers obtained from the crime scene in 2007. This is a clear violation of any crime scene processing method. What possible legitimate reason could these three have to intentionally get these seat covers from evidence and bring them to the processing of Fred Lee's 1994 Buick?

3) Rossi and Ramirez processed the seat covers on 3/22/2013 but no swabs obtained from them were submitted for testing along with the swabs from the 1994 Buick that were processed on the same day. Other items obtained from the victim's car (scent pads, drink cup, Hi-C juice box) were submitted with the 1994 Buick swabs. What happened to the swabs from the seat covers?

4) As shown previously, these same seat covers were discovered by someone four years later in 2017 as having never been tested for DNA. This find was so important that the State filed a somewhat archaic Motion to Consume when testing them. However, according to the WPD report, Rooney, Rossi, and Ramirez had processed them on 3/22/2017. Emails show they were in on the discussions of the newly found seat covers in 2017 and apparently said nothing about the swabs they had already obtained.

5) The DNA mixture profiles found on evidence items submitted from the 1994 Buick passenger seat cover and a scent pad from the victim's car are from the same source of DNA. The swabs were taken from the same source but labeled as if from two different automobiles, 5+ years apart. The odds of this same mixture profile happening by chance are astronomical even when compared to the numbers generated by a 24-locus DNA match.

6) The victim's entire DNA profile is found in both items indicating the goal was to falsely find both blood and the victim's DNA profile in the 1994 Buick. The only thing that saved Fred Lee from being arrested and wrongly incarcerated by the State in 2013 was the profile obtained from the swabs was a mixture of the victim's and other DNA profiles. Matches like this do not happen by accident.

7) Finally, the samples were processed out of numerical order. This only happens for a valid reason. I looked for possible reasons for this and didn't find any. One possible reason could be that the MCSO gave instructions to not process any swabs that were negative for blood. This was not the case here as one item from the 1994 Buick tested negative for blood and was still processed with the remaining items. This was done apparently by previous instructions according to the processing inventory. No reason is provided in the case file. However, there is a phone log that instructs the lab to do these first 10 items afterwards and suggest it was for this reason.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 24 of 63

**ADA Andrew James's Response Confirms Evidence Tampering and Cover-up.**

The attorneys for Fred Lee immediately decided to do the right thing in these circumstances and notified ADA Andrew James about some of our concerns about the evidence. I believe ADA James was only shown that the two cars produced the exact same mixture profile though taken 5 years apart. Most of the reasons listed on the previous page were not conveyed to ADA James. One week later, on 8/14/2017, ADA James sent us an email (the email and sections from it are outlined in orange) to explain what had happened along with a few documents that were not provided through discovery to support his explanation. The response was an example of *post hoc* storytelling. ADA James provided a trail of breadcrumbs to follow that, when followed, supposedly explains everything very clearly.

However, his explanation and the documents provided enabled me to confirm that Rooney, Rossi, and Ramirez planted the evidence in question. Furthermore, ADA James provided false/fraudulent documents to verify his story and these were provided to cover-up Rooney, Rossi, and Ramirez's misconduct. The email he sent containing the results of his investigation into the issue is on the next four pages. Please read and evaluate his email response. On the pages after that, I go over his response section by section and expose what really happened in this incident.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 25 of 63

---------- Forwarded message ----------
From: **James, Andrew** <andrew.james@mctx.org>
Date: Tue, Aug 14, 2018 at 8:56 AM
Subject: State v. Fred Lee - DNA Testing Issue
To: "Gerald Bourque (gerald@geraldebourque.com)" <gerald@geraldebourque.com>, Gerald Bourque <geraldbourque@hotmail.com>, Robert Morrow <ramorrow15@gmail.com>
Cc: "Shirley, Mike" <mike.shirley@mctx.org>, "Blackburn, Kelly" <kelly.blackburn@mctx.org>

Gerald & Robert,

We have been trying to get to the bottom of the issue with the evidence submitted to Bode for DNA testing that you brought to our attention on Thursday. If we are understanding the issue correctly, I think we have figured it out. It appears to us from our review of everything that the similarity between the electropherograms for items E11 (Willis PD Exhibit #138) and E12 (Willis PD Exhibit #63) is because they were both taken from the passenger seat cover of Brandon Brazel's vehicle.

It appears that the person who completed the submission form to Bode, which I believe is MCSO Detective Tommy Duroy, made the mistake of attributing Exhibit #138 as being swabs from the 1994 Buick when they were actually swabs from the passenger seat cover from Brazel's mustang. Brazel had seat covers on his driver and passenger seats and they were both taken and held as evidence when his vehicle was processed by the MCSO back in 2007 and then processed by MCSO CSI Cele Rossi again in 2013. The 1994 Buick did not have seat covers on it when it was processed in 2013.

The submission form to Bode says:

| | | |
|---|---|---|
| (138)-One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (63)-One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 26 of 63

However, when you look at the MCSO Evidence Submission Form from the processing of the 1994 Buick in 2013, item #138 is listed as:

| | | | |
|---|---|---|---|
| 138 | 2 | Swabs from passenger side seat cover (Exh#44) | MCSO Crime LAB |

And item #44 is the passenger seat cover from Brazel's vehicle:

| NO. | | (Describe Fully: Brand, Model/Serial #, Color, Size) | LOCATION - ADDRESS | REQUESTED | (LOCATION) |
|---|---|---|---|---|---|
| 44 | 1 | black colored seat cover | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | front passenger seat | | |

Additionally, on the attached PowerPoint from Bode, the following picture of Exhibit #138 from when Bode received the evidence, indicates that it contains "2 swabs collected from passenger seat cover (Exh# collected from Brandon Brazel's car @ MCSO crime lab" by MCSO CSI Cele Rossi.




Det. Rooney's report indicates that he retrieved Brazel's seat covers at the request of MCSO CSI Martinez while the CSIs were processing the Buick.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 27 of 63

up Mr. Mitchell and his family and drove then back home to 12815 Bexley Drive. When I arrived back at MCSO CSI Ramirez asked if I would retrieve the seat covers to Brandon Brazel's mustang and bring them to her for processing. I then drove to the Willis Police Department where I retrieved the driver and passenger side seat covers from evidence along with the projectiles due to them being stapled to one of the seat covers. I then drove back to MCSO where I released the seat covers and the projectiles to Ramirez. I then stayed on location until Rossi and Ramirez were done processing the vehicle for evidence. I then assisted in placing the front seats back in the vehicle and bolted them back down. I was advised by Rossi she would contact me when all the evidence from the 1994 White Buick Roadmaster was ready to be picked up along with the seat covers and projectiles. I then left MCSO and went off duty.

On 04-01-2013 I began to go through all the evidence in this case and figure out what went to the lab for analysis and what was processed (see master exhibit list). Over the next week I was able to complete the exhibit list and determine the outcome of all the evidence in this case. It was found that some of the evidence was sent to DPS but not analyzed and may need to be resubmitted at a later date.

On 04-03-2013 I arrived at MSCO Crime Scene and met with C. Rossi where the evidence that was collected from the 1994 Buick Roadmaster was released to me. I brought back all the evidence, logged it and placed it in the evidence room at the Willis Police Department where it will remain until it is sent to the lab for analysis.

On 05-07-2013 I drove to the MCSO Crime Lab and met with C. Rossi, T. Duroy, and T. Greenwood in reference to submitting evidence to a private lab in this case. I brought all of the evidence in this case to the Crime Lab and we went through the evidence and gathered numerous items that will be sent to Bode Lab. The item numbers that were released to T. Duroy and T. Greenwood to be sent to Bode Lab are 48a, 53a, 63, 64, 125, 128, 129, 130, 131, 132, 133, 134, 135, 136, and 138 (see master exhibit list). T. Duroy stated he would provide me with all the paperwork and provide a supplement report for the case file. While at the Crime Lab C. Rossi examined the latent lifts (item 73) that were gathered from the victim's vehicle and

Det. Rooney's master exhibit list has exhibit #44 as:

| | Victim's Vehicle Processing |
|---|---|
| 44 | One passenger side front black colored seat cover. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 28 of 63

And exhibit #138 as:

| | |
|---|---|
| 138 | The passenger side front seat cover of victim's vehicle was collected on 09/14/2007 (see item 44). Two swabs were collected for DNA from the victim's seat cover of the 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 04/03/2013 by |

The only locations that we are finding that exhibit #138 comes from the 1994 Buick is in the Bode paperwork and in Det. Duroy's supplement:

| | | |
|---|---|---|
| 138 | One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick). | Bode Technology |

It appears to us that Det. Duroy made a mistake in the submission paperwork to Bode. Given that the MCSO Evidence submission form lists Exhibit 138 on the same "grey sheet" as all of the swabs taken from the 1994 Buick, he probably assumed they were all from the same vehicle.

The seat cover from the passenger seat of Brazel's vehicle and the scent pads taken from that same seat cover have been held in an evidence since 2007. The attached PowerPoint from Bode also shows their documentation of the scent pads. The scent pad listed as Exhibit 64 is 2 gauze pads and the scent pad listed as Exhibit 65 is also 2 gauze pads. They both appear to have been in separate closed ziplock bags; however, those ziplock bags were not sealed with evidence tape. The ziplock bags were in their own sealed evidence envelope when they were submitted to Bode.

Myself, Mike Shirley, and Investigator John Stephenson went over to Willis PD on Friday and met Detective Rooney there. Unfortunately, there was no one at Willis PD that day who could get us into their evidence room to look at the items so Det. Rooney came up there on his day off to let us in. We video recorded from when had him open their evidence room and until we returned everything into and locked up their evidence room. We also took some pictures of the packaging of exhibits #138, #63, and #64. I have put that video recording and those pictures on a disc for you all. I can bring it to you or you all are welcome to pick it up from our office.

We are assuming that since Exhibit 138 (Bode E11) and Exhibit 63 (Bode E12) both came from the seat cover from the passenger seat of Brazel's vehicle, that would explain the similarity in the electropherograms. However, we aren't DNA experts and also if we have completely misunderstood the issue and spent Friday and today getting to the bottom of the wrong thing, please let me know ASAP. We want to make sure we figure this out.

Thank you.
Andrew James
Assistant District Attorney

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 29 of 63

This response provided by ADA James is clearly an attempt to cover up the actions of Rooney, Rossi, and Ramirez. This is based on his representations to the court in the Motion to Consume which, according to ADA James's 2017 email about finding the seat covers, were based on Rossi and Ramirez's input. When the defense brought up my DNA issues in August 2018, ADA James, at the very least, knew that Rooney, Rossi, and Ramirez had lied during the leadup to that motion.

It would be nice to know who it was that discovered the untested seat covers in 2017 since, according to ADA James, so many people knew they had already been tested in 2013. Was the Motion to Consume just a dog-and-pony put on by ADA James to mislead the court for some unknown reason? Or had Rooney, Rossi, and Ramirez been hiding what they had done four years? The last thing they wanted was for the "untested" seat covers to be discovered. They did not want attention on the seat covers especially when they already knew they did not contain Fred Lee's DNA profile. They wanted to let sleeping dogs lie.

From: **James, Andrew** <andrew.james@mctx.org>
Date: Tue, Aug 14, 2018 at 8:56 AM
Subject: State v. Fred Lee - DNA Testing Issue
To: "Gerald Bourque (gerald@geraldebourque.com)" <gerald@geraldebourque.com>, Gerald Bourque <geraldbourque@hotmail.com>, Robert Morrow <ramorrow15@gmail.com>
Cc: "Shirley, Mike" <mike.shirley@mctx.org>, "Blackburn, Kelly" <kelly.blackburn@mctx.org>

Gerald & Robert,

We have been trying to get to the bottom of the issue with the evidence submitted to Bode for DNA testing that you brought to our attention on Thursday. If we are understanding the issue correctly, I think we have figured it out. It appears to us from our review of everything that the similarity between the electropherograms for items E11 (Willis PD Exhibit #138) and E12 (Willis PD Exhibit #63) is because they were both taken from the passenger seat cover of Brandon Brazel's vehicle.

It appears that the person who completed the submission form to Bode, which I believe is MCSO Detective Tommy Duroy, made the mistake of attributing Exhibit #138 as being swabs from the 1994 Buick when they were actually swabs from the passenger seat cover from Brazel's mustang. Brazel had seat covers on his driver and passenger seats and they were both taken and held as evidence when his vehicle was processed by the MCSO back in 2007 and then processed by MCSO CSI Cele Rossi again in 2013. The 1994 Buick did not have seat covers on it when it was processed in 2013.

The submission form to Bode says:

| | | |
|---|---|---|
| (138)-One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (63)-One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |

I am always suspicious when someone uses cropped pieces of documents to explain their meaning. I prefer to present the entire document with annotations to highlight my points. The submission form that contains the above section is annotated on the next page. This page was presented previously in this document also.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 30 of 63

ADA James says Det. Duroy simply made a mistake when he filled out this submission form. He mistaken put (94 Buick) instead of (Victim's car) on the form. Sounds possible. It would be a serious mistake and quite a coincidence but it is possible.

# Case Submission Form

Bode Technology

Bode Case No (To be filled out by Bode): CCA1390-010

**In order to process your DNA casework efficiently, this form must be filled out and sent along with the evidence. Prior to submitting a case, please call Customer Services 866-BODE-4-ID (866-263-3443).**

The Bode Technology Group
10430 Furnace Rd. Suite 107
Lorton, VA 22079
Phone: 703-646-9740
Fax: 703-646-9742
www.bodetech.com

| Additional Evidence Items* (Note: Descriptions may be reflected in Chain of Custody and Report) | Please check the appropriate boxes for Pre-Screening and DNA Testing Requested | Permission to Consume (if necessary) |
|---|---|---|
| (132)-One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (133/Same Large Envelope)-2 swabs from front of driver seat bottom (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (136/Same Large Envelope)-2 swabs, driver side floor between carpet/molding (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (134)-One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (135/Same Large Envelope)-1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (138)-One evidence envelope w/ 2 swabs (touch/ contact DNA) from passenger seat cover (94 Buick). | Pre-Screen: ☒ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (63)-One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (64)-One evid. envel. w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (53A)-One evidence envelope w/ 1 swab from straw in Burger King cup (Console / Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| (48A)-One evid. envel. w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car). | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☒ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☒ Yes ☐ No |
| ** Electropherograms Included for Comparison ** | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☐ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☐ Yes ☐ No |
| | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☐ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☐ Yes ☐ No |
| | Pre-Screen: ☐ Blood ☐ Semen ☐ Saliva ☐ Hair<br>DNA Testing: ☐ STR ☐ miniSTR ☐ Y-STR ☐ mtDNA | ☐ Yes ☐ No |

* When submitting extracts, the reagent blanks must also be included. Please be sure to include the following information: Total Human Quant, Total Y Quant, Volume Remaining, and Extraction Control Names associated with samples.

**Additional Case Information:**

CONTINUED: Fred Dexter Lee III is a suspect in MCSO Capital Murder 07A012779, in which a Known DNA Reference Sample for Lee was collected (DPS Lab # L2H-176340). A copy of Lee's electropherogram ("F.D. Lee") was obtained from the Texas DPS Lab, along with electropherograms in the Willis PD case (Victim "BB", & three unknown DNA profiles from evidence) under DPS Lab # L2H-178189. It is possible that Fred Dexter Lee III is responsible for both homicides. A consulting / case review fee is included regarding the comparison of outer lab (DPS) profiles. The MCSO Cold Case Squad is assisting the Willis PD with this case, including evidence submission and payment of services. The MCSO will handle all submissions to DPS regarding any CODIS uploads. NOTE - The submissions involving TWO swabs are considered one sample. The swabs would have been held together and utilized as one swab for stability reasons. T. Duroy, Det.

EBH 6-4-13 60

Page 3

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 31 of 63

From the ADA's email:

However, when you look at the MCSO Evidence Submission Form from the processing of the 1994 Buick in 2013, item #138 is listed as:

| | | | |
|---|---|---|---|
| 138 | 2 | Swabs from passenger Side Seat cover (Exh#44) | MCSO Crime LAB |

The ADA provided this evidence submission form filled out by CSI Rossi as proof that the seat cover swabs were obtained and documented on 3/22/2013. Of major note is that only one of the two seat covers were processed even though both were in hand and important pieces of evidence. Also, the date. The swabs from the passenger seat cover (Exh#44) submitted into evidence on 3/22/2013. The items here are poorly labelled and if someone other than the author tried to use this info they'd have to go back to the author for clarification. There is no mention of which car any of the items on this page are from.

IDENTIFICATION DIVISION
*SUPPLEMENT*
Property Inventory & Laboratory Report

Receipt Date ____
Receiving Officer ____
Page ____ of ____ Pages

SUBMISSION METHOD
☐ In Person/Laboratory
☐ Security Hall Lockers
☐ Sally Port Lockers
☐ Photographs # ____
☐ Film Processing # ____
☐ Latent Lifts # ____
☐ Latent Processing
☐ Latent Comparison
☐ Narcotics Analysis
☐ Toxicology
☐ Physical Evidence
☐ Safekeeping
☐ Other (List)

1 Case Number W07-1181 Agency Willis PD
Offense/Incident Capital Murder Date of Offense/Incident 9/12/07

2 Submitting Officer (Print First and Last Name) Celestina Rossi Unit/I.D. # 6778
Submission Date 3/22/2013 Signature Celestina Rossi

3

| EXHIBIT NO. | QUANTITY | EVIDENCE SUBMITTED (DESCRIBE FULLY: BRAND, MODEL, SER. #, COLOR, SIZE) | ORIGIN WHERE FOUND LOCATION - ADDRESS | EXAMINATION REQUESTED | LAB ONLY (LOCATION) |
|---|---|---|---|---|---|
| 131 | 1 | Swab (+TMB) | Stain on passenger Side of armrest | | |
| 132 | 2 | Swabs (+TMB) | Seat bottom under armrest | | |
| 133 | 2 | Swabs | front of driver Seat bottom | | |
| 134 | 1 | Carpet Cutting | Carpet under driver Seat | | |
| 135 | 1 | Carpet Cutting | driver Side on driveShaft hump | | |
| 136 | 2 | Swabs | Driver Side, floor between Carpet & Molding | | |
| 137 | 1 | Ri-Data DVD-R | Video of Car | | |
| 138 | 2 | Swabs from passenger Side Seat cover (Exh#44) | MCSO Crime LAB | | |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 32 of 63

Same document as last page.

MONTGOMERY COUNTY SHERIFF'S OFFICE
IDENTIFICATION DIVISION
*SUPPLEMENT*
Property Inventory & Laboratory Report

LABORATORY USE ONLY
Receipt Date
Receiving Officer
Page ___ of ___ Pages

SUBMISSION METHOD
☐ In Person/Laboratory
☐ Security Hall Lockers
☐ Sally Port Lockers
☐ Photographs #
☐ Film Processing #
☐ Latent Lifts #
☐ Latent Processing
☐ Latent Comparison
☐ Narcotics Analysis
☐ Toxicology
☐ Physical Evidence
☐ Safekeeping
☐ Other (List)

1 Case Number W07-1181 Agency Willis PD
Offense/Incident Capital Murder Date of Offense/Incident 9/1/07

2 Submitting Officer (Print First and Last Name) Celestina Rossi Unit/I.D. # 6778
Submission Date 3/22/2013 Signature Celestina Rossi

| EXHIBIT NO. | QUANTITY | EVIDENCE SUBMITTED (DESCRIBE FULLY: BRAND, MODEL, SER. #, COLOR, SIZE) | ORIGIN WHERE FOUND LOCATION - ADDRESS | EXAMINATION REQUESTED | LAB ONLY (LOCATION) |
|---|---|---|---|---|---|
| 131 | 1 | Swab (+TMB) | Stain on passenger Side of armrest | | |
| 132 | 2 | Swabs (+TMB) | Seat bottom under armrest | | |
| 133 | 2 | Swabs | Front of driver Seat bottom | | |
| 134 | 1 | Carpet Cutting | Carpet under driver Seat | | |
| 135 | 1 | Carpet Cutting | driver Side, on drive shaft hump | | |
| 136 | 2 | Swabs | Driver Side, floor between Carpet & Molding | | |
| 137 | 1 | Ri-Data DVD-R | Video of Car | | |
| 138 | 2 | Swabs from passenger Side Seat Cover (Exh#44) | MCSO Crime LAB | | |

The first thing I noticed about this document was it appeared the entry pointed out by the ADA and circled on the previous page was darker than the rest of the text. This could also be conformational bias as I was looking for something wrong. However, I also noticed the "a" in the words swabs in the entry for #138 is a different style than the one in the word swabs every other time in the 2-page document (only one page shown both pages are in the Appendix). I'm not a hand writing expert so these are just anecdotal observations. As we'll see, the authenticity of this document is questionable anyway.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 33 of 63

From ADA's email.

And item #44 is the passenger seat cover from Brazel's vehicle:

| NO. | | (Describe Fully: Brand, Model/Serial #, Color, Size) | LOCATION - ADDRESS | REQUESTED | (LOCATION) |
|---|---|---|---|---|---|
| 44 | 1 | black colored seat cover | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | front passenger seat | | |

This the evidence list we received from the DPS in their case file. It was highlighted although the ADA's copy is not (not important that I know of). The ADA trimmed the list to show only the passenger seat cover but the actual document shows the driver's seat cover just below it. Anyone looking at this list for possible items to test would test both the passenger and driver seat covers, items #44 and #45 respectively. The ADA states that Rooney, Rossi, and Ramirez processed the passenger seat cover only but does not give a reason why. This list also contains the Hi-C drink box (Exhibit #48) that was also processed and submitted to Bode at this time.

MONTGOMERY COUNTY SHERIFF'S OFFICE
IDENTIFICATION DIVISION
Property Inventory & Laboratory Report

LABORATORY USE ONLY
Receipt Date
Property Officer
Page of
SUBMISSION METHOD
In Person / Laboratory
Print Name
Signature
Security Hall Lockers
Locker #
No. Window Envelopes
No. Film Envelopes
No. Latent Envelopes
No. White Envelopes
No. Brown Bags
No. Case Boxes
No. Other
Placed in

Case #: W07-1181 | Agency: Willis Police Department
Offense/Incident: Death Investigation | Date of Offense/Incident: 09/12/07
Location/Address Offense/Incident: 12480 IH-45 (Kroger) | City: Willis
1 Complainant/Victim: Brazel, Brandon | Race: w | Sex: m | DOB: [redacted]
Address: 811 Glen Hollow Ct. | City: Conroe | State: TX | Zip: 77385
Phone (Home): | Phone (Work):
Suspect/Defendant: Unknown | Race: | Sex: | DOB:
Address: | City: | State: | Zip:
Phone (Home): | Phone (Work):
Submitting Officer (First/Last Names): C. R. Ramirez | Unit#: 6505 | ID#: 6051
Agency: MCSO | Phone:
2 Address: #1 Criminal Justice Dr. | City: Conroe | State: TX | Zip: 77301
District: | Division: Crime Lab | Shift: 8a-5p
Submission Date: 09/19/07 | Signature: [signature]

| EXHIBIT NO. | QTY. | EVIDENCE SUBMITTED (Describe Fully: Brand, Model/Serial #, Color, Size) | ORIGIN WHERE FOUND LOCATION - ADDRESS | EXAMINATION REQUESTED | LAB ONLY (LOCATION) |
|---|---|---|---|---|---|
| 44 | 1 | black colored seat cover | 1997 Ford Mustang, TXLP: X49 RBR | Lab | |
| | | | front passenger seat | | |
| 45 | 1 | black colored seat cover | 1997 Ford Mustang, TXLP: X49 RBR | Lab | |
| | | | driver's seat | | |
| 46 | 1 | rear vinyl covering of driver's seat | 1997 Ford Mustang, TXLP: X49 RBR | | |
| 47 | 1 | back rest area of driver's seat | " " | | |
| 3 48 | 1 | Hi-C drink box (empty) | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | front passenger floorboard | | |
| 49 | 1 | green pill "Watson 503" (1.6 grams) | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | rear passenger side floorboard | | |
| 50 | 2 | green pills "Watson 503" (2.6 grams) | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | driver's side rear floorboard | | |
| 51 | 1 | green pill "Watson 503" (2 grams) | 1997 Ford Mustang, TXLP: X49 RBR | | |
| | | | front passenger seat under part of seatcover covering seat's back | | |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 34 of 63

This picture is from the slides provided to the ADA from Bode. This slide and the remaining slides will answer a lot of questions but not the ones the ADA intended. Though these pictures were asked for in discovery, they were not provided.

From the ADA's email:

Additionally, on the attached PowerPoint from Bode, the following picture of Exhibit #138 from when Bode received the evidence, indicates that it contains "2 swabs collected from passenger seat cover (Exh# collected from Brandon Brazel's car @ MCSO crime lab" by MCSO CSI Cele Rossi.



The labelling on passenger seat cover swab envelope is by Rossi, same as the evidence list she filled out when processing it on 3/22/2013. However, the date on the evidence envelope is 4/3/2013, two weeks after it was supposedly processed by Rossi according to her, Rooney, and ADA James. Without a doubt, one of these is fraudulent.

I don't know which date, if either, is correct. This evidence envelope's authenticity cannot be confirmed at any rate. There is no time of collection written on the envelope. Time stamps are essential and CSIs routinely, almost subconsciously, note the time and date on every piece of evidence. Evidence labelling requires 4 things: ID number, time collected, date collected, and written description. Other things can be required but these are the essentials. Mistrials have been declared when evidence did not have a time stamp. It is a clear indication of fraudulent labelling. Because everything processed by a CSI at all crime scenes has a time stamp, it is very difficult to put a time stamp in the past on an evidence label or other document. The investigator cannot have been doing two things at the same time. I suspect the labels of fraudulent evidence in other cases may have this tell-tale "signature," by Rossi and Ramirez, that evidence has been tampered with.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 35 of 63

Below is the evidence envelope received by Bode. Emily Herrera evidently confirmed these two evidence descriptions are the same and no reconciliation is necessary. I have processed thousands of clinical samples myself and find it difficult to believe this sample could make it through sample processing accidentally. It seemed Emily either knew it was mislabeled and intentionally let it still be assigned the lab number or this was not the envelope received and processed by Emily. However, this would indicate some kind of vast conspiracy that I do not think occurred. I believe it did just got by Emily. There is the very real possibility that evidence tampering at Bode may have occurred and an investigation may reveal it did, but I do not have enough evidence to support a claim like this. Only Rooney, Rossi, and Ramirez are solidly implicated in the evidence planting with ADA James and possibly others participating in the cover-up with them.

| | | | | |
|---|---|---|---|---|
| 138 | One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick) scent | 2 EVBN 6-2013 | Yes | Yes |

**Do these labels match?**

The exhibit number (44) is missing. Maybe she could not remember it when she wrote this label. If the seat cover was in hand, as it should have been, she could look at its label.










No time stamp. The place it should be, compared to the others, is missing.

Time stamps are found on all other evidence envelopes (not all shown).










For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 36 of 63

This is an ancillary complaint about Bode's about sample processing. It is a very important process were the sample labelling on the received item is verified as being the same as the labelling on the submission form. The sample is then given a laboratory ID# that will be used from that point on. Technicians should be highly trained in sample processing with the process protocoled and documented. People get fired for messing this up. Below is page one of the evidence inventory where Emily Herren confirmed the labelling so the new laboratory number can be used for identification from then on.

CCA1390-0101

Bode Technology

INVENTORY - CCA1390-0101

**Bode Case Number:** *CCA1390-0101* **Case Sealed Status:** *Yes*

**Agency Case Number:** *W07-1181* **Case Sealed Type:** *Evidence Tape*

**Additional Case Number:** *Not Listed*

**Victim(s):** *Brandon Glenn Brazel*

**Suspect(s):** *Fred Dexter Lee III*

| Bode Item Number | Agency ID | Description | Quantity | Sealed | Submitted |
|---|---|---|---|---|---|
| CCA1390-0101-E01 | 125 | One evidence envelope w/ 2 swabs from carpet in trunk (94 Buick). Positive TMB | 2 | Yes | Yes |
| CCA1390-0101-E02 | 128 | 2 swabs from rear floormat (94 Buick). Positive TMB | 2 | Yes | Yes |
| CCA1390-0101-E03 | 129 | 2 swabs, inside passenger seat bottom/flush w/ driver seat (94 Buick) | 2 | Yes | Yes |
| CCA1390-0101-E04 | 130 | 2 swabs, inside driver seat bottom flush w/ passenger seat (94 Buick) + TMB | 2 | Yes | Yes |
| CCA1390-0101-E05 | 131 | 1 swab from stain on passenger side of armrest (94 Buick). Positive TMB | 1 | Yes | Yes |
| CCA1390-0101-E06 | 132 | One evidence envelope w/ 2 swabs from seat bottom under armrest (94 Buick). Positive TMB | 2 | Yes | Yes |
| CCA1390-0101-E07 | 133 | 2 swabs from front of driver seat bottom (94 Buick) | 2 | Yes | Yes |
| CCA1390-0101-E08 | 136 | 2 swabs, driver side floor between carpet/molding (94 Buick) | 2 | Yes | Yes |
| CCA1390-0101-E09 | 134 | One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick) | 1 | Yes | Yes |
| CCA1390-0101-E10 | 135 | 1 - cutting from carpet (driver's side, on drive-shaft hump (94 Buick) | 1 | Yes | Yes |
| CCA1390-0101-E11 | 138 | One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick) | 2 | Yes | Yes |
| CCA1390-0101-E12 | 63 | One evidence envelope w/ 1 ~~sent~~ scent pad (swabbing) from front passenger seat (Victim's car) | EBH 6-20-13 ~~1~~ 2 | Yes | Yes |
| CCA1390-0101-E13 | 64 | One evid. envel. w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car) | EBH 6-20-13 ~~1~~ 2 | Yes | Yes |
| CCA1390-0101-E14 | 53A | One evidence envelope w/ 1 swab from straw in Burger King cup (Console/Victim's car) | 1 | Yes | Yes |
| CCA1390-0101-E15 | 48A | One evid. envel. w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car) | 1 | Yes | Yes |

EBH 6.5.13

W07-1181

1 of 4 4

This list shows items 63 and 64 were labelled incorrectly. The mislabeling was reconciled (pad in description was actually 2 pads). Reconciliation is a protocoled process used by labs to ensure the sample's identification is known before it a lab ID# is assigned. Item 138 does not have any notations about the conflict in labelling.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 37 of 63

This section of the ADA's email contains a section from Rooney's report that was shown previously as part of the indications that evidence was planted. The date of the entry at the top is 3/22/2013. ADA James states Rooney retrieved the seat at the request of Martinez.

From the ADA's email:

Det. Rooney's report indicates that he retrieved Brazel's seat covers at the request of MCSO CSI Martinez while the CSIs were processing the Buick.

up Mr. Mitchell and his family and drove then back home to 12815 Bexley Drive. When I arrived back at MCSO CSI Ramirez asked if I would retrieve the seat covers to Brandon Brazel's mustang and bring them to her for processing. I then drove to the Willis Police Department where I retrieved the driver and passenger side seat covers from evidence along with the projectiles due to them being stapled to one of the seat covers. I then drove back to MCSO where I released the seat covers and the projectiles to Ramirez. I then stayed on location until Rossi and Ramirez were done processing the vehicle for evidence. I then assisted in placing the front seats back in the vehicle and bolted them back down. I was advised by Rossi she would contact me when all the evidence from the 1994 White Buick Roadmaster was ready to be picked up along with the seat covers and projectiles. I then left MCSO and went off duty.

On 04-01-2013 I began to go through all the evidence in this case and figure out what went to the lab for analysis and what was processed (see master exhibit list). Over the next week I was able to complete the exhibit list and determine the outcome of all the evidence in this case. It was found that some of the evidence was sent to DPS but not analyzed and may need to be resubmitted at a later date.

On 04-03-2013 I arrived at MSCO Crime Scene and met with C. Rossi where the evidence that was collected from the 1994 Buick Roadmaster was released to me. I brought back all the evidence, logged it and placed it in the evidence room at the Willis Police Department where it will remain until it is sent to the lab for analysis.

On 05-07-2013 I drove to the MCSO Crime Lab and met with C. Rossi, T. Duroy, and T. Greenwood in reference to submitting evidence to a private lab in this case. I brought all of the evidence in this case to the Crime Lab and we went through the evidence and gathered numerous items that will be sent to Bode Lab. The item numbers that were released to T. Duroy and T. Greenwood to be sent to Bode Lab are 48a, 53a, 63, 64, 125, 128, 129, 130, 131, 132, 133, 134, 135, 136, and 138 (see master exhibit list). T. Duroy stated he would provide me with all the paperwork and provide a supplement report for the case file. While at the Crime Lab C. Rossi examined the latent lifts (item 73) that were gathered from the victim's vehicle and

On 04-01-2013, ten days after retrieving the seat covers from evidence and giving them to Ramirez, Rooney began to go through all the evidence in the case and figure what had went to the lab and what had been processed. Both seat covers had been sent to the DPS lab and returned unprocessed. Rooney, Rossi, and Ramirez certainly knew about the untested seat covers before Rooney brought Fred Lee's 1994 Buick to the MCSO. They knew before Rooney began looking for it. The sequence of events on 3/22/2013 were (1) bring the 1994 Buick to MCSO, (2) find blood evidence in car, and (3) Ramirez tells Rooney to get the seat covers. Ramirez knew the plan to plant evidence using the untested seat covers before the 1994 Buick was brought in by Rooney. How did Rooney know they existed before finding this out when going through the evidence on 4/1/2013? This plan had hatched long before this.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 38 of 63

Same section of ADA's email.

Det. Rooney's report indicates that he retrieved Brazel's seat covers at the request of MCSO CSI Martinez while the CSIs were processing the Buick.

up Mr. Mitchell and his family and drove then back home to 12815 Bexley Drive. When I arrived back at MCSO CSI Ramirez asked if I would retrieve the seat covers to Brandon Brazel's mustang and bring them to her for processing. I then drove to the Willis Police Department where I retrieved the driver and passenger side seat covers from evidence along with the projectiles due to them being stapled to one of the seat covers. I then drove back to MCSO where I released the seat covers and the projectiles to Ramirez. I then stayed on location until Rossi and Ramirez were done processing the vehicle for evidence. I then assisted in placing the front seats back in the vehicle and bolted them back down. I was advised by Rossi she would contact me when all the evidence from the 1994 White Buick Roadmaster was ready to be picked up along with the seat covers and projectiles. I then left MCSO and went off duty.

On 04-01-2013 I began to go through all the evidence in this case and figure out what went to the lab for analysis and what was processed (see master exhibit list). Over the next week I was able to complete the exhibit list and determine the outcome of all the evidence in this case. It was found that some of the evidence was sent to DPS but not analyzed and may need to be resubmitted at a later date.

On 04-03-2013 I arrived at MSCO Crime Scene and met with C. Rossi where the evidence that was collected from the 1994 Buick Roadmaster was released to me. I brought back all the evidence, logged it and placed it in the evidence room at the Willis Police Department where it will remain until it is sent to the lab for analysis.

On 05-07-2013 I drove to the MCSO Crime Lab and met with C. Rossi, T. Duroy, and T. Greenwood in reference to submitting evidence to a private lab in this case. I brought all of the evidence in this case to the Crime Lab and we went through the evidence and gathered numerous items that will be sent to Bode Lab. The item numbers that were released to T. Duroy and T. Greenwood to be sent to Bode Lab are 48a, 53a, 63, 64, 125, 128, 129, 130, 131, 132, 133, 134, 135, 136, and 138 (see master exhibit list). T. Duroy stated he would provide me with all the paperwork and provide a supplement report for the case file. While at the Crime Lab C. Rossi examined the latent lifts (item 73) that were gathered from the victim's vehicle and

On 04-03-2013, two days after beginning to go through the evidence from the victim's car in 2007, the evidence from the 1994 Buick is released to Rooney. No mention is made of picking up the seat covers or the swab obtained from the passenger seat cover only.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 39 of 63

From the ADA's email.

Det. Rooney's master exhibit list has exhibit #44 as:

| | Victim's Vehicle Processing |
|---|---|
| 44 | One passenger side front black colored seat cover. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. |

The ADA's email shows exhibit #44 on the master exhibit list above. Below is the same item but also shows the deleted column on the right and exhibit #45, driver's seat cover, right below it. The ADA offers no explanation as to why only one was tested. The column that was deleted by the ADA shows the seat cover was "swabbed" by Rossi on 4/3/2013, not on 3/22/2013 as he and previous documents he presented have stated. Why delete the column unless you noticed the discrepancy? There is no mention of Rooney releasing the either seat cover (#44 and #45) to Ramirez on 3/22/2013 though the ADA just documented they were with Rooney's report. This master list is fraudulent and unreliable. Rooney has doctored it trying to cover-up their actions.

| | Victim's Vehicle Processing | |
|---|---|---|
| 44 | One passenger side front black colored seat cover. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. | Received by DPS on 10/09/2007.<br><br>Results on 02/29/2008 no analysis was performed.<br><br>Swabbed by C. Rossi 04/03/2013 see item 138.<br><br>In evidence room. |
| | | |
| 45 | One driver's side front black in color seat cover. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. | Received by DPS on 10/09/2007.<br><br>Results on 02/29/2008 no analysis was performed.<br><br>In evidence room. |
| | | |

Where is Released to Ramirez "on 3/22/2013?"

Page 12 of 53

UPDATED – 3/6/2013

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 40 of 63

From ADA's email:

And exhibit #138 as:

| | |
|---|---|
| 138 | The passenger side front seat cover of victim's vehicle was collected on 09/14/2007 (see item 44). Two swabs were collected for DNA from the victim's seat cover of the 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 04/03/2013 by |

This section of the ADA's email shows exhibit #138 on Rooney's master exhibit list above. Below is the entire page of the list that also shows exhibit #136, collected on 3/22/2013 by Rossi and Ramirez from the 1994 Buick. Rooney's WPD report, Rossi's evidence list, and the ADA's email document the swabs in exhibit #138 were obtained from the passenger seat cover on 3/22/2013. However, Rooney's Master Evidence List (below), Rossi's evidence envelope labeling, and ADA James's email also document the swabs in exhibit #138 were obtained from the passenger seat covers were obtained on 4/3/2013. Exhibit #138 was also intentionally mis-numbered to hide the fact that it was actually obtained from the single (passenger) seat cover (next page).

| | | |
|---|---|---|
| | | evidence. |
| 136 | Two swabs of drivers side floor between carpet and molding. Collected from the 1994 Buick Roadmaster white in color VIN # 1G4BN52P1RR431114. Collected on 03/22/2013 by MSCO C. Rossi and C. Ramirez. | In Evidence room not sent to lab.<br><br>05-07-2013 Released to MCSO Duroy.<br><br>05-07-2013 Sent to Bode Lab.<br><br>07-25-2013 Results were the DNA is consistent with a mixture of at least two individuals with at least one male contributor. Brandon Brazel and Fred Lee III are excluded.<br><br>07-18-2014 Returned from Bode back in evidence. |
| 137 | One DVD video of the 1994 Buick Roadmaster white in color VIN # 1G4BN52P1RR431114. Collected on 03/22/2013 by MSCO C. Rossi and C. Ramirez. | Evidence Room<br><br>Downloaded to Willis PD server also. |
| 138 | The passenger side front seat cover of victim's vehicle was collected on 09/14/2007 (see item 44). Two swabs were collected for DNA from the victim's seat cover of the 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 04/03/2013 by MCSO C. Rossi. | Evidence room not sent to lab.<br><br>05-07-2013 Released to MCSO Duroy.<br><br>05-07-2013 Sent to Bode Lab. |

Page 44 of 53

UPDATED – 3/6/2013

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 41 of 63

A meeting between several of the actors is covered on the following pages but first we'll go over the intentional mis-numbering of the passenger seat cover swab (exhibit #138). The ten swabs from the 1994 Buick and exhibit #138 (seat cover swabs collected on 3/22/2013) were sent to Bode on 5/7/2013. The previously mentioned scent pads, a Hi-C drink box swab, and the swab from the straw in a cup were submitted at the same time. The drink box swab entry (below) from Rooney's evidence list illustrates proper exhibit numbering. Each evidence item (exhibit) is given a single number and swabs taken from it are given the same number with an "a" after it. The swabs obtained from exhibit 48, labeled as exhibit 48a are labelled correctly as shown below. Below that is the swab from the Burger King cup, exhibit 53a was obtained from exhibit 53. Exhibits 48a and 53a were only submitted to give the scent pad submission (submitted to match the mislabeled set cover from the 1994 Buick) credibility. These items produced expected results, the victim's son and the victim's profiles respectively. Over a dozen other swabs and items from the victim's car were not submitted including sun glasses with blood on them. The real exhibits that Rooney, Rossi, and Ramirez wanted to submit were the scent pads from the victim's car. They planned for the scent pads to match the seat covers mis-labelled as being from the 1994 Buick. They matched but it was a mixture containing the victim's profile that could not be deconvoluted.

| | | |
|---|---|---|
| 48 | One Hi-C drink box (empty) from front passenger floorboard. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. | Evidence room not sent to lab. |
| 48a | Swab from Hi-C drink box (48) Collected on 05-07-2013 by MCSO C. Rossi. | In Evidence room not sent to lab.<br><br>05-07-2013 Released to MCSO Duroy.<br><br>05-07-2013 Sent to Bode Lab.<br><br>07-25-2013 Results were the DNA profile obtained is consistent with a mixture of at least two individuals including a major male contributor (male 2) Brandon Brazel and Fred Lee III have been excluded.<br><br>07-18-2014 Returned from Bode back in |

| | | |
|---|---|---|
| 53 | One Burger King cup collected from the center console cup holder. Collected from the victim's vehicle a 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 09/14/2007 by MCSO C. Ramirez and C. Rossi. | Evidence room not sent to lab. |
| 53a | One swab from Burger King cup. Collected on 05-07-2013 by MCSO C. Rossi | Evidence room not sent to lab.<br><br>05-07-2013 Released to MCSO Duroy.<br><br>05-07-2013 Sent to Bode Lab. |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 42 of 63

By the time we get to the last section of the email it is obvious that the ADA's story and the documents provided are not accurate. Here the ADA fills in the entire story for us in case we were not able to follow the bread crumbs provided. It's possible ADA James just told the story and passed on the documents given to him by Rooney and Rossi, but he edited key information out of the document excerpts he presented in his email. ADA James knew that Rooney, Rossi, and Ramirez hadn't said anything about this previous testing at the time both untested seat covers were discovered in 2017. ADA James had to know at this time that Rooney, Rossi, and Ramirez had lied and he should have informed the defense and the proper authorities. Instead he joined the conspirators and participated in the cover-up He then leads us on a dog and pony show to Willis PD where, even though it is Friday, they can't get into the evidence room because Rooney is off and he has the keys. Note that Rooney controls everything in this case. He ran the investigation, he wrote the WPD Report, he records evidence processing, and he controls all of the evidence. The pictures ADA James sent of the evidence after Rooney let him in did not include a picture of the seat covers or the chain of custody that should be written on it. This chain of custody on exhibits #44 and #45 should accurately reflect the release to Ramirez, processing by Rossi on 3/22/2013, processing by Rossi on 4/3/2013(?), or does it skip from 2008 to 2017 when they were discovered and led to the Motion to Consume? After seeing that the pictures did not show the seat cover packaging or its chain of custody, I did not watch the video.

From the ADA's email:

The only locations that we are finding that exhibit #138 comes from the 1994 Buick is in the Bode paperwork and in Det. Duroy's supplement:

| | | |
|---|---|---|
| 138 | One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick). | Bode Technology |

It appears to us that Det. Duroy made a mistake in the submission paperwork to Bode. Given that the MCSO Evidence submission form lists Exhibit 138 on the same "grey sheet" as all of the swabs taken from the 1994 Buick, he probably assumed they were all from the same vehicle.

The seat cover from the passenger seat of Brazel's vehicle and the scent pads taken from that same seat cover have been held in an evidence since 2007. The attached PowerPoint from Bode also shows their documentation of the scent pads. The scent pad listed as Exhibit 64 is 2 gauze pads and the scent pad listed as Exhibit 65 is also 2 gauze pads. They both appear to have been in separate closed ziplock bags; however, those ziplock bags were not sealed with evidence tape. The ziplock bags were in their own sealed evidence envelope when they were submitted to Bode.

Myself, Mike Shirley, and Investigator John Stephenson went over to Willis PD on Friday and met Detective Rooney there. Unfortunately, there was no one at Willis PD that day who could get us into their evidence room to look at the items so Det. Rooney came up there on his day off to let us in. We video recorded from when had him open their evidence room and until we returned everything into and locked up their evidence room. We also took some pictures of the packaging of exhibits #138, #63, and #64. I have put that video recording and those pictures on a disc for you all. I can bring it to you or you all are welcome to pick it up from our office.

We are assuming that since Exhibit 138 (Bode E11) and Exhibit 63 (Bode E12) both came from the seat cover from the passenger seat of Brazel's vehicle, that would explain the similarity in the electropherograms. However, we aren't DNA experts and also if we have completely misunderstood the issue and spent Friday and today getting to the bottom of the wrong thing, please let me know ASAP. We want to make sure we figure this out.

Thank you
Andrew James
Assistant District Attorney

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 43 of 63

BARBARA GLADDEN ADAMICK
District Clerk
MONTGOMERY COUNTY, TEXAS
By ______ Deputy

SEP 22 2017 3:57 pm
RECEIVED AND FILED
FOR RECORD
At ______ o'Clock ______ M.

CAUSE NO. 15-05-04575-CR

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE DISTRICT COURT |
| VS. | § | MONTGOMERY COUNTY, TEXAS |
| Fred Dexter Lee, III | § | 221st JUDICIAL DISTRICT |

STATE'S MOTION TO PERMIT CONSUMPTION OF DNA SAMPLES DURING TESTING
IN A CAPITAL CASE

Evidence List in State's 1st Motion to Consume – 9/22/2017

| Sample Name | Sample Type |
|---|---|
| Evidence Item 198 | Swab from passenger's seat cover from Brazel's Vehicle |
| Evidence Item 199 | Swab from driver's seat cover from Brazel's Vehicle |

Evidence List in State's 2nd Motion to Consume – 10/9/2017

**DNA testing:**

| Sample Name | Sample Type |
|---|---|
| Exhibit 73 | Swabs from Envelope with Latent Lift card |
| Exhibit 97 | Swab from passenger side window control button |
| Exhibit 98 | Swab from passenger side lock button |
| Exhibit 99 | Swab from passenger side door release handle |
| Exhibit 100 | Swab from passenger side door change holder |
| Exhibit 101 | Swab from passenger side door grid section 1 |
| Exhibit 102 | Swab from passenger side door grid section 2 |
| Exhibit 103 | Swab from passenger side door grid section 3 |
| Exhibit 104 | Swab from passenger side door grid section 4 |
| Exhibit 105 | Swab from passenger side door grid section 5 |
| Exhibit 106 | Swab from passenger side door grid section 7 |
| Exhibit 107 | Swab from passenger side door grid section 8 |
| Exhibit 109 | Swab from passenger side door grid section 10 |
| Exhibit 110 | Swab from passenger side door grid section 11 |
| Exhibit 111 | Swab from passenger side door grid section 12 |
| Exhibit 112 | Swab from passenger side door grid section 13 |
| CI-179027 | Swabs collected from tape lifts from passenger seat back and bottom |

At the top of the page is the header from the State's 1st Motion to Consume on 9/22/2017. The evidence items listed in this motion plus the items in a second motion filed on 10/9/2017 are the evidence items "discovered" in September 2017 to have not yet been tested in this case. This is also the list of untested evidence (plus the four items that were submitted) that was known to Rooney, Rossi, and Ramirez in 2013. Rooney stated that he had accounted for all of the untested evidence in his WPD Reported entry on 4/1/2013 (shown in upcoming page). Rossi and Ramirez had collected these evidence items at the crime scene in 2007.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 44 of 63

The last document excerpt presented by ADA James is from page 3 of a 4 page Supplemental Report (to the case file) by Det. Duroy. The ADA says Det. Duroy mistaken put '94 Buick instead of Victim's car on the Bode Submission Form on 5/7/2013 and made the same mistake when he wrote this report at least three days later. I wonder if Det. Duroy knows he was thrown under the bus twice. I believe that when Det. Duroy filled out Bode Submission Form, if he even did it himself, he used a list provided by Rooney or Rossi. This list may be the same one he inserted into his supplemental report and he has no idea that he was blamed for these errors. A closer look at the rest of this supplemental report follows.

| | | |
|---|---|---|
| 133 | (Same Large Envelope)-2 swabs from front of driver seat bottom (94 Buick). | **Bode Technology** |
| 136 | (Same Large Envelope)-2 swabs, driver side floor between carpet/molding (94 Buick). | **Bode Technology** |
| 134 | One evidence envelope w/ one cutting from carpet (under driver's seat/94 Buick). | **Bode Technology** |
| 135 | (Same Large Envelope)-1 cutting from carpet (driver's side, on drive-shaft hump (94 Buick). | **Bode Technology** |
| 138 | One evidence envelope w/ 2 swabs (touch/contact DNA) from passenger seat cover (94 Buick). | **Bode Technology** |
| 63 | One evidence envelope w/ 1 scent pad (swabbing) from front passenger seat (Victim's car). | **Bode Technology** |
| 64 | One evidence envelope w/ 1 scent pad (swabbing) from front pass. seat/back rest area (Victim's car). | **Bode Technology** |
| 53A | One evidence envelope w/ 1 swab from straw in Burger King cup (Console / Victim's car). | **Bode Technology** |
| 48A | One evidence envelope w/ 1 swab from exterior of HI-C Juice Box (front pass. floorboard/Victim's car). | **Bode Technology** |
| N/A | ** Electropherograms Included for Comparison ** | **Bode Technology** |

On Thursday, May 9, 2013, at approximately 5:31 pm, Detective Greenwood and I delivered the above package to FedEx located at 121 Enterprise Row, Conroe, Texas 77301. The package was shipped Priority / Overnight to the following facility:

Page 3 of 4

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 45 of 63

This is page one of Det. Duroy's Supplement Report to the WPD case file. At a meeting on 5/2/2013, Rooney gains the assistance of the MCSO. This means the MCSO will pay for DNA evidence that is submitted to Bode. Six years after the crime and Rooney can't wait 2 months for the DPS lab to do the work. MCSO Captain Zenor attended this meeting and authorizes the assistance by MCSO. His signature is on the evidence submission form to authorize payment. Rooney's report does not include this meeting but does include the meeting on 5/7/2013 described in paragraphs 4 and 5 below (and next page).

MONTGOMERY COUNTY SHERIFF'S OFFICE
*Cold Case Squad – Homicide*

## *SUPPLEMENT REPORT*

**CASE NUMBER:** **W07-1181 (WILLIS PD CASE)**
**SYNOPSIS:** ***EVIDENCE TO BODE TECHNOLOGY LABORATORY – 05/09/2013***
**OFFENSE:** **CAPITAL MURDER (19.03 TX PC)**
**COMPLAINANT:** **BRAZEL, BRANDON GLENN (DECEASED)**
**SUSPECT:** **LEE, FRED DEXTER III**
**DETECTIVE:** **DUROY, THOMAS G.**

**SUPPLEMENT SECTION:**

On Thursday, May 2, 2013, I, Detective Thomas Duroy, attended a meeting regarding Montgomery County Sheriff's Office (MCSO) case number **07A012779** (Capital Murder – Killebrew / Cheney) and Willis Police Department (WPD) case number **W07-1181** (Capital Murder – Brazel). WPD Detective Kevin Rooney also attended. It was thought that both homicides could have been committed by the same individual (Fred Dexter Lee III).

It was decided that my unit (MCSO Cold Case-Homicide) would assist WPD (Detective Rooney) with their homicide, including submission of evidence to Bode Technology Lab for DNA analysis. MCSO Captain Bruce Zenor attended the meeting and subsequently authorized our involvement in the WPD case.

Bode Technology Lab is a private, accredited, DNA laboratory utilized by the MCSO Cold Case Squad. Bode Technology Lab offers expedited testing, including a one day turnaround. The Texas Department of Public Safety (DPS) Lab, often utilized by local law enforcement, usually takes months to complete DNA analysis and evidence being submitted may be limited by DPS.

On Tuesday, May 7, 2013, MCSO Crime Scene Investigator (CSI) Celestina Rossi, MCSO Detective Terance Greenwood, Detective Rooney, and I met in the MCSO Crime Lab and evaluated evidence in the WPD case. Montgomery County Assistant District Attorney (ADA) Robert Michael Shirley joined us later.

A number of items of evidence from the WPD case were selected for submission to Bode Technology Lab. The listed items were turned over to Detective Greenwood and me from Detective Rooney at that time and stored on the Cold Case Shelf in the Property Section of the MCSO Crime Lab.



For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 46 of 63

From previous page.

including a one day turnaround. The Texas Department of Public Safety (DPS) Lab, often utilized by local law enforcement, usually takes months to complete DNA analysis and evidence being submitted may be limited by DPS.

On Tuesday, May 7, 2013, MCSO Crime Scene Investigator (CSI) Celestina Rossi, MCSO Detective Terance Greenwood, Detective Rooney, and I met in the MCSO Crime Lab and evaluated evidence in the WPD case. Montgomery County Assistant District Attorney (ADA) Robert Michael Shirley joined us later.

A number of items of evidence from the WPD case were selected for submission to Bode Technology Lab. The listed items were turned over to Detective Greenwood and me from Detective Rooney at that time and stored on the Cold Case Shelf in the Property Section of the MCSO Crime Lab.

Page 1 of 4

A second meeting is described in the supplemental report between Det. Duroy, Rossi, Rooney, Det. Greenwood, and ADA Michael Shirley. They meet in the crime lab to evaluate the evidence in the unsolved Brandon Brazel murder case. At the meeting on the 5/2/2013, Rooney convinced MCSO Captain Zenor that this murder was done by Fred Lee. He knew that Fred Lee was a suspect (also without any evidence) in an ongoing MCSO cold case investigation. Captain Zenor authorized payment by MCSO to Bode for processing Rooney's evidence for DNA. A number of items were selected for submission.

**From Rooney's WPD report:**

On 04-01-2013 I began to go through all the evidence in this case and figure out what went to the lab for analysis and what was processed (see master exhibit list). Over the next week I was able to complete the exhibit list and determine the outcome of all the evidence in this case. It was found that some of the evidence was sent to DPS but not analyzed and may need to be resubmitted at a later date.

On 4/1/2013 Rooney began going over all the evidence based on the master exhibit list. Sections of this list were shown previously including the seat cover entries (exhibits 44 and 45) and the 17 items listed in the 2nd Motion to Consume. By the end of the week, Rooney had determined "the outcome of all of the evidence in this case." Some of the evidence may need to be submitted at a later date. This is ten days after Rooney had given the driver's and passenger's seat covers to Rossi and Ramirez for processing.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 47 of 63

**From Rooney's WPD report:**

On 05-07-2013 I drove to the MCSO Crime Lab and met with C. Rossi, T. Duroy, and T. Greenwood in reference to submitting evidence to a private lab in this case. I brought all of the evidence in this case to the Crime Lab and we went through the evidence and gathered numerous items that will be sent to Bode Lab. The item numbers that were released to T. Duroy and T. Greenwood to be sent to Bode Lab are 48a, 53a, 63, 64, 125, 128, 129, 130, 131, 132, 133, 134, 135, 136, and 138 (see master exhibit list). T. Duroy stated he would provide me with all the paperwork and provide a supplement report for the case file. While at the Crime Lab C. Rossi examined the latent lifts (item 73) that were gathered from the victim's vehicle and

This is the relevant portion of Rooney's WPD report entry for the meeting at the crime lab on 5/7/2013 with Rossi, Det. Duroy, Det. Greenwood, and ADA Shirley. Rooney "brought all of the evidence in this case to the crime lab and we went through the evidence…" Rooney then states "The item numbers that were released to T. Duroy and T. Greenwood…" indicating a list with the items was given to the detectives. This list had to contain the descriptions of the items made by Rooney and Rossi. Det. Duroy and Greenwood were completely unfamiliar with the evidence in the Brandon Brazel murder and it is unreasonable to believe they would be able to fill out the evidence submission form without a list of the evidence made by someone who was familiar with it. Rooney's WPD report entry raises serious questions about the content of this meeting;

- Did Rooney bring all of the evidence in the case (23 items including the four items submitted and the 19 items discovered in 2017) and the five people present at the meeting chose to submit only one of the seat covers (Item #138), a straw from the victim's cup (Item #53a), and a swab from a Hi-C juice box (Item #48a), and two unsealed scent-pads from the victim's car while disregarding all of the other items discovered in 2017, including the then supposedly untested passenger and driver's seat covers?
- If the above were true and a movie was made about the crime, people would be shouting at the TV to test the seat covers. They, like myself, would be wondering how they hadn't already been tested in over 5 years. If the group chose to submit only the one seat cover (like they evidently did according to the ADA), the audience would groan knowing they'd test the other seat cover at some later time and catch the killer. This isn't a movie but this is what ADA James says happened at that meeting.
- Did ADA Shirley know about only submitting one seat cover and was he OK with it? If somehow he did go along this, he and everyone else at the meeting would be excited about their good fortune in finding the seat covers and anxious to find out the results. Just as they were in 2017.
- Or did a different scenario occur? This is discussed on the next page.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 48 of 63

Other scenarios also come to mind. Perhaps Rooney and Rossi misrepresented the evidence they had and Duroy just trusted they were being honest. The plan was to find Brandon Brazel's DNA profile and blood in in the car formerly owned by Fred Lee. They would say that Fred Lee had tracked Brandon Brazel's blood into his car when it splattered on him during the crime.

Rooney and Rossi had obtained swabs from the straw (53a) and Hi-C drink box (48a) before the meeting. Perhaps they brought the scent pads (63 and 64) along with these two items and represented them as all the evidence they had. The item #138's description was on the list Duroy received from Rooney and Rossi. It was actually labelled on the list as described by Duroy and submitted to Bode with everything else. This does not explain how the sample labeling made it through sample processing at Bode. Though problematic, it may be the most likely scenario.

I believe Rooney, Rossi, and Ramirez cooked up this scheme long before this meeting. Knowing they had the seat covers and believing the victim's DNA would certainly be on them, Rooney and Rossi came up with a plan to plant evidence implicating Fred Lee in Brandon Brazel's death. First they found the 1994 Buick that was driven by Fred Lee in 2007. They hoped Ranger Doolittle would say there was evidence of blood in the car. However, Bluestar does not have the false positives, including beans and potatoes, that the TMB reagent has. However he did not find any evidence of blood. Rooney brought it in anyway two weeks later on 3/22/2013 where Rossi and Ramirez said blood was found in 6 places not found by Ranger Doolittle. Ramirez sent Rooney to get the seat covers to set their plan in motion. That day they took two swabs (#138) from the seat cover (maybe the driver's) and probably wiped the passenger seat cover with the scent pad. It is hard to determine what they did and what their thinking was but there is evidence both seat covers were processed at this time (upcoming).

Rooney's report states that on 4/1/2013 he "began to go through the evidence and figure out what went to the lab for analysis and what was processed (see master exhibit list)." Rooney and Rossi had taken swabs from the seat covers 10 days before. Needing to get the samples processed, they go to Duroy at the MCSO Cold Case Unit to get him on board. They do this at the meeting on 5/2/2013. We are finding what remains in the documentation after the attempt failed and they tried to cover it up as best they could. Some records could not be covered up though and we were left a legitimate trail of bread crumbs that led to the truth. In 2017, they were almost caught when someone discovered the seat covers had not been tested. However, ADA James ignored the implications of this discovery. I'd like to hear the explanation they gave to him to explain how the seat covers had not been tested in 10 years. In reality, Rooney, Rossi, and Ramirez knew the results already. ADA James found this out a year later and wrote his email to cover it up.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 49 of 63

About 6 weeks after the samples are submitted to Bode, Duroy receives the DNA report from Bode. Duroy writes this supplemental report on 6/25/2013. The supplement contains a summary that Duroy made of the Bode DNA report and the actual report.

**2nd Supplemental Report by Duroy After Receiving DNA Report from Bode.**

MONTGOMERY COUNTY SHERIFF'S OFFICE
*Cold Case Squad – Homicide*

## SUPPLEMENT REPORT

| | |
|---|---|
| CASE NUMBER: | W07-1181 (WILLIS PD CASE) |
| SYNOPSIS: | *BODE TECHNOLOGY LAB REPORT (PART 1) RECEIVED – 06/25/2013* |
| OFFENSE: | CAPITAL MURDER (19.03 TX PC) |
| COMPLAINANT: | BRAZEL, BRANDON GLENN (DECEASED) |
| SUSPECT: | LEE, FRED DEXTER III |
| DETECTIVE: | DUROY, THOMAS G. |

**SUPPLEMENT SECTION:**

On Tuesday, June 25, 2013, I, Detective Thomas Duroy, received a Bode Technology Laboratory report (along with Compact Disk containing critical data) via FedEx (Tracking Number 796064114900) regarding this case. The files bore Bode Technology Laboratory case number **CCA1390-0101 (PART 1)**.

The Bode technology Lab report revealed the following:

**SUMMARY (BODE LAB REPORT **):**

**Forensic Biology Results:**

1. No blood was detected in the following samples:

CCA1390-0101-E01
CCA1390-0101-E02
CCA1390-0101-E03
CCA1390-0101-E04
CCA1390-0101-E05
CCA1390-0101-E06
CCA1390-0101-E07
CCA1390-0101-E08
CCA1390-0101-E09
CCA1390-0101-E10
CCA1390-0101-E11

**DNA Processing, Results, Conclusions, and Statistics:**

Page 1 of 4

All of the samples from Fred Lee's car and the swab from the seat cover are tested for blood as requested by MCSO. They all test negative.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 50 of 63

ADA James's email states Duroy made the same labeling mistake only twice when he submitted the evidence. Here he makes the mistake a third time 6 weeks later. There is no mention in the report of a seat cover from the victim's 1997 Mustang. If Duroy made a labeling mistake when submitting the item, he certainly would have noticed it now especially if expecting the results of the passenger seat cover from the victim's car that Rooney supposedly brought to the 5/7/2013 meeting. Either Duroy purposely wrote this incorrectly again knowing that it was incorrect (to help cover-up?) or it wasn't a labeling mistake made by him in the first place. Duroy wrote the description given to him by Rooney and Rossi and he, nor anyone else, expected results from the passenger seat cover.

**2nd Supplemental Report by Duroy After Receiving DNA Report from Bode.**

1. DNA profiles were provided for agency samples 01-1A1 B.B. (Brandon Brazel), 114_F.D. LEE (Fred Dexter Lee III), 02-1E7A, 02-1G1A, and 02-1I1B-RA.

2. The DNA profile obtained from sample **CCA1390-0101-E11 (2 swabs, touch / contact DNA from passenger seat cover of 94 Buick)** is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E11.

3. The DNA profile obtained from sample **CCA1390-0101-E12 (1 scent pad / swabbing from front passenger seat – Victim's car)** is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E12.

4. The DNA profile obtained from sample **CCA1390-0101-E13 (1 scent pad / swabbing from front passenger seat / back rest area – Victim's car)** is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the possibility of allelic drop out, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E13.

5. The partial DNA profile obtained from sample **CCA1390-0101-E14 (1 swab from straw in Burger King cup, console – Victim's car)** is consistent with a male contributor (Male 1).

   The partial DNA profile obtained from sample CCA1390-0101-E14 ***MATCHES*** the DNA profile provided for agency sample 01-1A1 B.B. (Brandon Brazel).

   The probability of randomly selecting an unrelated individual with this DNA profile at 10 of 15 loci tested is:

   **1 in 1.2 trillion** in the U.S. Caucasian population.
   **1 in 2.8 trillion** in the U.S. African American population.
   **1 in 400.0** billion in the U.S. Hispanic population.

Page 2 of 4

Straw in victim's Burger King cup produces the victim's DNA profile.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 51 of 63

This is the DNA Report received from Bode. There are 4 other suspects in this crime but their profiles were not submitted. The DNA profiles of two of these suspects were found on the interior door release handle of the victim's car and on a blood stain on the victim trousers. This information is in a DPS Crime Lab DNA Report dated 3/22/2013, the same day Rooney, Rossi, and Ramirez planted the DNA evidence against Fred Lee. This DNA report and results are not mentioned in Rooney's WPD Report nor is any investigation based on its results. He ignored these results and devoted the next 6 years to framing Fred Lee for this murder.

**2nd Supplemental Report by Duroy After Receiving DNA Report from Bode.**

**Bode Case #:** CCA1390-0101 **Date:** June 6, 2013
**Agency Case #:** W07-1181

**DNA profiles provided by Montgomery County Sheriff's Office on May 10, 2013 for comparison purposes:**

| Agency Sample ID | Agency Description |
|---|---|
| 01-1A1 B.B. | Victim ("B.B.") Brandon Brazel |
| 114_F.D.LEE | Suspect Fred Dexter Lee III |
| 02-1E7A | Unknown DNA Profile |
| 02-1G1A | Unknown Profile |
| 02-1I1B-RA | Unknown Profile |

**Forensic Biology Results:**

1. No blood was detected in the following samples:

CCA1390-0101-E01
CCA1390-0101-E02
CCA1390-0101-E03
CCA1390-0101-E04
CCA1390-0101-E05
CCA1390-0101-E06
CCA1390-0101-E07
CCA1390-0101-E08
CCA1390-0101-E09
CCA1390-0101-E10
CCA1390-0101-E11

**DNA Processing, Results, Conclusions, and Statistics:**

The evidence was processed for DNA typing by analysis of the 13 CODIS Short Tandem Repeat loci, the D2S1338 locus, the D19S433 locus, and the Amelogenin locus using the Applied Biosystems AmpFLSTR® Identifiler® Plus kit.

1. DNA profiles were provided for agency samples 01-1A1 B.B. (Brandon Brazel), 114_F.D.LEE (Fred Dexter Lee III), 02-1E7A, 02-1G1A, and 02-1I1B-RA.

2. The DNA profile obtained from sample CCA1390-0101-E11 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E11.

3. The DNA profile obtained from sample CCA1390-0101-E12 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the complexity of the mixture, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E12.

4. The DNA profile obtained from sample CCA1390-0101-E13 is consistent with a mixture of three or more individuals including at least one male contributor.

   Due to the possibility of allelic drop out, no conclusions can be made on the mixture DNA profile obtained from sample CCA1390-0101-E13.

Result for the seat cover as shown in the Bode Lab Report. No mention of passenger seat cover. It has been renamed CCA1390-0101-E11 now by the Bode lab.

Page 2 of 5

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 52 of 63

This is the entry into Rooney's Evidence Processing List. Rooney had no trouble recognizing item #138, the passenger seat cover swabs, even though they were labelled as being from the 1994 Buick in Duroy's summary and just the new number in the Bode DNA report. The evidence list also states the swab was collected on 4/3/2017 but Rooney and Rossi's documentation show it was collected on 3/22/2013. The release of the seat covers to Ramirez on 3/22/2013 is not shown in this document. The release from the MCSO crime lab back to evidence on 4/3/2013 is missing also. Rooney, Rossi, and Ramirez know the DNA results of the victim's passenger's seat cover is a mixture of three or more individuals. The question is: Does Det. Duroy, Det. Greenwood, ADA Shirley, and Capt. Zenor know the victim's passenger's seat cover has been tested with the results shown below or do they just think it is one of eleven 1994 Buick swabs submitted by Rooney, Rossi, and Ramirez that proved useless?

| | | |
|---|---|---|
| | | also. |
| | | |
| 138 | The passenger side front seat cover of victim's vehicle was collected on 09/14/2007 (see item 44). Two swabs were collected for DNA from the victim's seat cover of the 1997 blue Ford Mustang TX LP #X49-RBR. Collected on 04/03/2013 by MCSO C. Rossi. | Evidence room not sent to lab.<br><br>05-07-2013 Released to MCSO Duroy.<br><br>05-07-2013 Sent to Bode Lab. |

Page 44 of 53

UPDATED – 3/6/2013

| | | |
|---|---|---|
| | | 07-25-2013 results were the DNA profile obtained is consistent with a mixture of three or more individuals including at least one male contributor. Due to the complexity of the mixture no conclusions can be made.<br><br>07-18-2014 Returned from Bode back in evidence. |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 53 of 63

As shown previously, Bode processed the samples out of order for an unknown reason. The DNA report and MCSO supplement only covered the last 5 samples on the Bode submission form. This is page one of Det. Duroy's 3rd supplemental report after receiving the results of the first 10 items submitted, all from the 1994 Buick. Nothing of any use was found on the swabs from the1994 Buick. These 10 swabs were collected and submitted solely so they could say the mislabeled swab, from the victim's seat cover in his 1997 Mustang because it likely contained the victim's profile, was obtained from the 1994 Buick. Only page one of this supplement report is shown for brevity.

MONTGOMERY COUNTY SHERIFF'S OFFICE
*Cold Case Squad – Homicide*

# SUPPLEMENT REPORT

| | |
|---|---|
| CASE NUMBER: | W07-1181 (WILLIS PD CASE) |
| SYNOPSIS: | *BODE TECHNOLOGY LAB REPORT (PART 2) RECEIVED – 07/17/2013* |
| OFFENSE: | CAPITAL MURDER (19.03 TX PC) |
| COMPLAINANT: | BRAZEL, BRANDON GLENN (DECEASED) |
| SUSPECT: | LEE, FRED DEXTER III |
| DETECTIVE: | DUROY, THOMAS G. |

**SUPPLEMENT SECTION:**

On Wednesday, July 17, 2013, I, Detective Thomas Duroy, received a Bode Technology Laboratory report (along with Compact Disk containing critical data) via FedEx **(Tracking Number 796214504544)** regarding this case. The files bore Bode Technology Laboratory case number **CCA1390-0101 (PART 2)**.

The Bode technology Lab report revealed the following:

**SUMMARY (BODE LAB REPORT):**

1. DNA profiles were previously provided for agency samples 01-1A1 B.B. (Brandon Brazel), 114_F.D. LEE (Fred Dexter Lee III), 02-1E7A, 02-1G1A, and 02-1I1B-RA.

2. The partial DNA profile obtained from sample **CCA1390-0101-E01 (2 swabs from carpet in trunk of 94 Buick)** is consistent with a mixture of at least two individuals including a major male contributor.

   The individuals associated with agency samples 01-1A1 B.B. (Brandon Brazel) and 114_F.D. LEE (Fred Dexter Lee III) and the profiles provided for agency samples 02-1E7A, 02-1G1A, and 02-1I1B-RA are ***EXCLUDED*** as possible contributors of the partial major component DNA profile obtained from sample CCA1390-0101-E01.

3. The DNA profile obtained from sample **CCA1390-0101-E02 (2 swabs from rear floor-mat of 94 Buick)** is consistent with a mixture of three or more individuals including at least one male contributor.



For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 54 of 63

As fate would have it, a discernable profile for Brandon Brazel was not found on the swabs from the seat cover so the plan didn't work. However, now only Rooney, Rossi, and Ramirez know that the passenger's seat cover from the victim's car has been tested and nothing of value was found on it. The driver's seat cover was not tested at the same time. How do you explain why only one was tested if anyone are found? How was it explained to ADA James when they admitted what they had done in 2018? He just ignored this oddity in his email explanation.

Rooney, Rossi, and Ramirez decided to not say anything and pretend they don't know anything about the passenger seat cover having been tested already. Hopefully, no one would ever discover they exist. They knew there no DNA profiles of value on them so what does it matter if they didn't tell anyone? The seventeen other evidence items that also remained untested probably didn't have the real killer's profile either.

The problem was, if anyone finds out that they exist and are untested, they'd be excited about it just as anyone at the 5/7/2013 meeting would have been if they had known they existed. Somehow ADA James discovered that <u>two</u> seat covers existed and <u>both</u> had not been tested yet. Perhaps he or a new pair of eyes looked at the original evidence list. Filing the Motion to Consume shows he was excited about the seat covers and took extra care to protect any results. He hoped that Fred Lee's DNA profile would be found on them.

I wonder what Rooney, Rossi, and Ramirez's reaction was when the seat covers were discovered in 2017. The ADA's emails from that period in 2017 when the seat covers were discovered indicate Rooney, Rossi, and Ramirez were heavily relied upon in the decision making process. They did not tell the ADA (or the court) that the seat covers had already been tested and they knew the results were not probative. Instead, they pushed for a sham motion to consume evidence they already knew the results from.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 55 of 63

About a year later, on 5/15/14, Det. Duroy and Greenwood receive the DNA extracts from Bode for the previous evidence submission. <u>Again, why are DNA extracts returned to law enforcement agencies?</u> What can they do with them that isn't bad? This will be a constant complaint of mine until this practice is stopped! Det. Duroy submitted the extracts into evidence (gave to Rooney?) on 5/16/14.

**MONTGOMERY COUNTY SHERIFF'S OFFICE**
**IDENTIFICATION DIVISION**
**SUPPLEMENT**
**Property Inventory & Laboratory Report**

**LABORATORY USE ONLY**
Receipt Date 5/16/14
Property Officer [signature]
Page ___ of ___
**SUBMISSION METHOD**
☒ In Person / Laboratory
T Duroy, Det.
Print Name
[signature]
Signature
☐ Security Hall Lockers
Locker # ___

No. ___ Window Envelopes
No. ___ Film Envelopes
No. ___ Latent Envelopes
No. ___ White Envelopes
No. ___ Brown Bags
No. ___ Case Boxes
No. ___ Other ___

Placed In ___

**1**

| | | | |
|---|---|---|---|
| **Case #:** | W07-1181 | **Agency:** | Willis PD |
| **Offense/Incident:** | Capital Murder | **Date of Offense/Incident:** | 09/12/07 |

**2**

| | | | | | |
|---|---|---|---|---|---|
| **Submitting Officer** (First/Last Names): | Thomas G. Duroy | **Unit#:** | D2007 | **ID#:** | 4323 |
| **Submission Date:** | 05/15/14 | **Signature:** | [signature] | | |

**3**

| EXHIBIT NO. | QTY. | EVIDENCE SUBMITTED (Describe Fully: Brand, Model/Serial #, Color, Size) | ORIGIN WHERE FOUND LOCATION - ADDRESS | EXAMINATION REQUESTED | LAB ONLY (LOCATION) |
|---|---|---|---|---|---|
| | 1 | Larger plastic bag w/ one smaller plastic bag containing DNA Extract Tubes in Bode Technology Lab # CCA1390-0101. Received on 05/15/14, via FedEx tracking # 798824726213, by MCSO Det. T. Duroy & MCSO Det. T. Greenwood. | Bode Technology - 10430 Furnace Road, Suite 107, Lorton, VA, 22079. | Hold | |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 56 of 63

This is the FEDEX envelope received by Det. Duroy and Det. Greenwood.




For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 57 of 63

This is the inventory of the extracts received from Bode. Sample E11a1 is the DNA extract from the victim's passenger seat cover. Greenwood is included in the ADA's emails about the DNA consumption motions so is he involved in pushing for a sham motion to consume when he knows the seat cover extracts are sitting in evidence? I think not. If they wanted to test the passenger seat cover, this is the best reagent to use. Not only did they have the extract, it was 10 times more concentrated than the extract obtained from the passenger seat cover in 2017. This is reflected in the data generated by the extracts.

W07-1181
BRAZIL (V).

| tube | sample | substrate |
|---|---|---|
| 35 | CCA1390-0101-E11a1 | Y |
| 36 | CCA1390-0101-E12a1 | Y |
| 37 | CCA1390-0101-E13a1 | Y |
| 38 | CCA1390-0101-E14a1 | Y |
| 39 | CCA1390-0101-E15a1 | Y |
| 40 | CCA1390-RB1 | Y |
| 01 | CCA1390-0101-E01a1 | Y |
| 02 | CCA1390-0101-E02a1 | Y |
| 03 | CCA1390-0101-E03a1 | Y |
| 04 | CCA1390-0101-E04a1 | Y |
| 05 | CCA1390-0101-E05a1 | Y |
| 06 | CCA1390-RB2 | Y |
| 07 | CCA1390-0101-E06a1 | Y |
| 08 | CCA1390-0101-E07a1 | Y |
| 09 | CCA1390-0101-E08a1 | Y |
| 10 | CCA1390-0101-E09a1 | Y |
| 11 | CCA1390-0101-E10a1 | Y |
| 12 | CCA1390-RB3 | Y |

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 58 of 63

From Rooney's WPD report:

On 09-20-2017 I drove to the MCSO Crime Lab and met with Rossi and Ramirez where they took item 44 and 45 which were the seat covers from Brandons Mustang and swabbed them for DNA to be submitted to DPS Lab in Houston. The swabs were marked 198 and 199 on the master exhibit list. The swabs were left in the custody of MCSO Crime Lab.

This is the last entry in Rooney's WPD report. Rooney, Rossi, and Ramirez obtain swabs from the seat covers again after they are discovered in 2017. Check out how awkward the first sentence is. He also states the swabs from the seat covers would be submitted to the DPS Lab in Houston but they were submitted to Bode. They again give the seat covers improper exhibit numbers, 198 and 199, when they should be 44a and 45a. The passenger's seat cover now has three exhibit numbers (44, 138, and 198) instead of one. How is this handled in court? Pick up the seat cover and state "Here he have exhibit 44 and 138 and 198?" The driver's seat cover is now two exhibits (45 and 199).

I would like to hear the conversation that took place here. I wonder if any of them thought they should "come clean" and admit what they did. Another interesting conversation is the one between these three and ADA James when he asked them to explain their actions to him when confronted with my concerns a year later.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 59 of 63

This is an email from ADA James to Det. Greenwood on the day after Rooney, Rossi, and Ramirez took the swabs from the seat covers in 2017 (previous page). ADA James describes a meeting on the day before with Rooney, Rossi, and Ramirez. They discussed the remaining untested evidence that was discovered along with the seat covers that Rooney, Rossi, and Ramirez had processed the day before. This meeting raises a number of questions:

1. Did Rooney, Rossi, or Ramirez inform ADA James at this time that the passenger's seat cover had been processed in 2013?
2. Did they tell him the results and he submitted the Motion to Consume to the court on the next day anyway?
3. How did they explain why they had said nothing about the existence of this evidence since the crime was committed in 2007?
4. Kenneth Bivens, a new character in this story, is among the recipients of this email. Who is Kenneth Bivens? Is he the new pair of eyes that discovered the untested evidence in 2017?
5. How could ADA James use documents and explanations provided by Rooney, Rossi, and Ramirez in his 2018 email to the defense explaining evidence tampering when he knew they had been lying to him for years? Reprehensibly, he chose to help them cover up their illegal activities.

**Greenwood, Terance**

| | |
|---|---|
| **From:** | James, Andrew |
| **Sent:** | Thursday, September 21, 2017 10:45 AM |
| **To:** | Rossi, Celestina; Greenwood, Terance; Bivens, Kenneth |
| **Subject:** | Fred Lee Bode Testing |

Everyone,

I was just thinking about some of the stuff and Cele, Christine, Rooney, and I discussed yesterday and I probably need you to call Bode back and ask a few more questions.

Yesterday we discussed whether the following things could be done for testing:

1. Taking all of the remaining swabs/whatever remains of those swabs from the inside of brazel's vehicle and having them all run together to see if all of them combined would have a sufficient amount of biological material to get a profile (DPS tested a bunch of them 10 years ago and wasn't able to get a profile).
2. Taking the latent print card and swabbing underneath the adhesive side of the tape and DNA testing that.
3. Taking a tape lift and swabbing the adhesive side as well.

Cele, please jump in and add or correct what I've written because I know you understand this stuff a lot better than I do.

Terance & Ken, would you guys mind asking Bode if they could do this stuff and if so, how much it would cost us? And if it can be done can we get approval for it?

Andrew James
Assistant District Attorney
Chief, Vehicular Crimes
Montgomery County District Attorney's Office
207 W. Phillips, 2nd Floor
Conroe, Texas 77301
P: 936-538-3551
F: 936-760-6940
E: Andrew.James@mctx.org

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 60 of 63

Passenger's and Driver's seat cover results in 2017.

Table 1: Anal[y]... ea[t]

Passenger's seat cover in 2013.

| | Locus | CCA1390-0101-E11a1 |
|---|---|---|
| 5 | D8S1179 | (9), 12, (13), (15), (16) |
| 2 | D21S11 | 29, 30, (32.2) |
| | D7S820 | 8, 9, 10, (12) |
| | CSF1PO | 11, (12) |
| | D3S1358 | 14, 15, 16, (17), (18) |
| 1 | TH01 | (6), 7, (8), (9), (9.3) |
| | D13S317 | (8), 9, (10), 11, 12 |
| | D16S539 | (11), 12, 13, (14) |
| | D2S1338 | 17, 19, 21, (22), (24) |
| 4 | D19S433 | 13, 14 |
| | vWA | (14), 17, (18) |
| 3 | TPOX | 8, 9, 10, 11 |
| 6 | D18S51 | (13), (14), 15, 16, 17 |
| | Amelogenin | X, (Y) |
| | D5S818 | (9), (11), 12 |
| | FGA | 19, (20), (21), (22), 23, 24, (26) |

( ) = minor allele --- = possible addition

Table 1: Analys... Lo[cus]

Passenger's seat cover in 2017. Driver's seat cover in 2013.

| | Locus | CCA1390-0101-E16a1 | CCA1390-0101-E17a1 |
|---|---|---|---|
| | Amelogenin | X, (Y) | X, (Y) |
| 1 | TH01 | 7, (8) | 7, (9.3) |
| | D3S1358 | No Results | 15, --- |
| | vWA | No Results | 17, --- |
| 2 | D21S11 | No Results | No Results |
| 3 | TPOX | (8), 9, 11 | 8, 9, (11) |
| | DYS391 | 10, --- | 10, --- |
| | D1S1656 | No Results | 15.3, 17.3 |
| | D12S391 | No Results | No Results |
| | SE33 | No Results | No Results |
| | D10S1248 | (13), 14, (15) | (13), 14, (15) |
| | D22S1045 | 16, --- | 16, (17) |
| 4 | D19S433 | No Results | 14, --- |
| 5 | D8S1179 | No Results | No Results |
| | D2S1338 | No Results | No Results |
| | D2S441 | 9, 10, (11), 14 | 9, 11, 14 |
| 6 | D18S51 | 14, 15 | 15, 17 |
| | FGA | No Results | No Results |
| | D16S539 | 12, (13) | 12, 13 |
| | CSF1PO | 11, --- | 11, (12) |
| | D13S317 | No Results | No Results |
| | D5S818 | No Results | No Results |
| | D7S820 | No Results | No Results |

Above are the results for the mislabeled seat cover in 2013 on the left and for both seat covers in 2017 on the right. In 2016, seven more DNA loci were added to the original loci in the 2013 results and the order of the loci in the table was changed. I have put numbers next to six individual loci for easier comparison between the two tables.

The DNA obtained from the passenger seat cover in 2013 is of good quality and generated DNA profiles but is a mixture. The victim's entire profile is found in this mixture. This shows the seat covers had been stored properly (e.g. kept dry in a paper bag) since they were collected at the crime scene in 2007. This is important because it shows the driver's seat cover had also been stored properly. In 2017, it could be expected to produce good DNA profiles (if DNA is present). However, the previously unprocessed driver's seat cover appears to have been processed already since most loci have no results compared to the robust results obtained in 2013. It appears it was processed in 2013 just like the passenger's seat cover that we know was processed at that time.

This is the evidence that the driver's seat cover was also processed in 2013 as discussed. Anecdotal evidence but fairly strong anecdotal evidence.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 61 of 63

## Full Circle

This story began at ADA James's 1st Motion to Consume and ends with the results produced by the DNA testing sought in that motion. The documents presented, all obtained from ADA James, clearly show there was a conspiracy to plant DNA evidence intended to convict Fred Lee of Capital Murder. The conspiracy was put into motion in 2013 by WPD Sgt. Rooney, MCSO CSI Rossi, and MCSO CSI Ramirez. Since the original conspiracy, these three have worked to actively cover up their actions. In September of 2018, MCADA Andrew James discovered their actions and, instead of revealing their conspiracy, he chose to join them in an attempt to continue the cover-up and convict Fred Lee of Capital Murder.

I have presented documents and explanations that might seem to implicate individuals that I do not believe are involved in these conspiracies. There is no intent in this complaint to cast aspersions all law enforcement officers, crime scene investigators or prosecutors. Based on the documents presented, I will give a summary of each person's involvement in the conspiracies. This is done based on the cast of characters listed at the beginning.

**WPD Sgt. Kevin Rooney** – Rooney is one of the three main conspirators in a scheme to plant evidence intended to implicate Fred Lee in the Capital Murder of Brandon Brazel. At no time did Rooney properly investigate this crime before determining that Fred Lee did it based on a phone call. Rooney and his co-conspirators initiated their plan to frame Fred Lee before they had even received the DNA test results of items previously submitted from the crime scene. These DNA results provided strong evidence of who actually committed the murder but these results have been ignored to this day. The evidence planting scheme only failed because, unknown to the conspirators, the planted DNA was a mixture. After the failed attempt, Rooney actively worked to cover up his crime until the time of Fred Lee's trial in January of 2019. During the ongoing cover-up, Rooney finally had Fred Lee arrested for the crime and he sat in jail for over three years waiting to go to trial. The jury found that Fred Lee was "not guilty" of the crime. Rooney's actions were criminal and a complete betrayal of the public trust. He should be ostracized by everyone inside and outside of the law enforcement community. I hope the contempt I have for Rooney and his conspirators is apparent in this complaint. They should be shown the same compassion that they showed Fred Lee.

**MCSO CSI Celestina Rossi** – Rossi is the second conspirator in this corrupt undertaking. The things said about Rooney above also apply to her. The damage to the public trust by Rossi may be even greater than that done by Rooney. Rossi and Ramirez have been the crime scene investigators at (many, most, or all?) crime scenes in Montgomery County at least since Brandon Brazel's murder in 2007. How many times have her attempts to plant evidence been successful? A close look must be taken at every case she has been involved with. The nature of her job makes taking part in this conspiracy especially heinous. She must be dealt with severely to demonstrate to the public that this kind of behavior will not be tolerated.

**MCSO CSI Christine Ramirez** – Ramirez is the third conspirator in this crime. Documents show she started the ball rolling on 3/22/2013 by telling Rooney to get the seat covers from evidence. The three seem to have participated equally from planting the evidence in 2013 to swabbing both seat covers in 2017 when they already knew the results. Again, punishment must be severe.

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 62 of 63

**MCADA Andrew James** – ADA James is not one of the three original evidence planting conspirators but his actions may be even worse. It's one thing when local law enforcement officer's are corrupt. However, it is another thing entirely when the representative of the State of Texas discovers the corruption and actively works to cover it up in order to convict an innocent man of Capital Murder. ADA James knew Rooney, Rossi, and Ramirez had lied when he asked them about my concerns with the DNA evidence and they admitted to the previous testing. How much they told him of their conspiracy is unknown. However, they provided him with false documents and he used them to fabricate a story that he knew to be false. He knowingly deprived Fred Lee of his freedom and civil rights from that point up until the trial where he sought to put Fred Lee in prison for the rest of his life. Perhaps if he receives a similar fate it will send a message to prosecutors across Texas that this type of behavior is unacceptable.

**MCADA Michael Shirley** – I don't believe ADA Shirley was involved in or knew about ADA James's cover-up of Rooney, Rossi, and Ramirez's actions. There are two reasons for this. First, ADA Shirley was unaware that ADA James had filed the Motion to Consume. Many times at a trial, the prosecution has an ADA who has more experience with DNA witnesses but hasn't been involved in the case every day like the main prosecutor. I believe this was ADA Shirley's role. During a lunch break at the trial, he and I went through the slides I wanted to use in my testimony. This went quickly until we came to the Motion to Consume. Just like I had been, ADA Shirley was surprised to see it and said he hadn't seen one in many years. Then we moved on. I was suspicious of him since I already knew about the evidence tampering. However, I believed him. Second, he had heard the DPS Crime Lab's Andrew McWhorter's testimony. He also understood that the chart I had made to rebut his false testimony directly contradicted McWhorter and showed his testimony to be false (Texas Forensic Science Commission complaint by Dr. Robert Collins dated January 23, 2019). When I showed him the documents I would use and said I would destroy McWhorter if he tried to challenge my testimony, he backed down and the prosecution let my chart into evidence without objection. This chart led to the not guilty verdict. I think ADA Shirley knew things may not be as they appeared. Time will tell but I was listening for him to say things that would implicate him in the plot but did not hear anything.

**MCSO Det. Duroy and Det. Greenwood** – I do not believe either of these two were aware of anything that happened regarding this incident and cover-up. They were duped by Rooney, Rossi, and Ramirez just like MCSO Capt. Zeno and ADA Shirley were. They did not have any reason to mistrust these three and ADA James.

**Bode Lab** – A couple of issues about the Bode lab were brought up in this complaint. These need to be followed up on especially the questions about the evidence envelope submitted.

**The seat covers** – After years of misuse and abuse, may they rest in peace.

This document is true and correct to the best of my knowledge. There are documents following this page that support the statements in this complaint. Documents submitted with this complaint include my *curriculum vitae*, Bode case files, DPS case files, MCSO files, WPD files and various documents and emails received from ADA James.

Respectfully submitted,

Dr. Robert Collins

For Official Governmental Use Only - Do Not Disseminate to the Public: 110271041 - Page 63 of 63

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this November 29, 2023

Certified Document Number: 110271041 Total Pages: 63

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**