# Exhibit 5

P7

NO. 1546111

THE STATE OF TEXAS
- VS -
**ANTONIO ARMSTRONG, JR.**

IN THE 178TH DISTRICT COURT
COURT OF HARRIS COUNTY, TEXAS

ORDER

On this the **8TH DAY OF MARCH, 2017** it appearing to this court that the **313TH JUDICIAL DISTRICT COURT** sitting as a Juvenile Court of Harris County, Texas, has certified to this court that it has waived jurisdiction of **CASE NO. 201604464J- AMENDED** upon the docket of said court, styled In The Matter of: **ANTONIO ARMSTRONG, JR.** a delinquent child, and has transferred to this court said **ANTONIO ARMSTRONG, JR.** for Criminal proceedings, and to be dealt with as an adult in accordance with law; and it appearing to the court from said court' certification, including the written order and finding of the court accompanied by a complaint in said case against said **ANTONIO ARMSTRONG, JR.**

**OFFENSE(S) OF CAPITAL MURDER COMMITTED ON OR ABOUT THE 29TH DAY OF JULY, 2016;**

a felony and that said **ANTONIO ARMSTRONG, JR.** was fifteen years of age or older at the time of the commission of said alleged offense.

IT IS ACCORDINGLY CONSIDERED, ORDERED AND ADJUDGED THAT jurisdiction of this court of said **ANTONIO ARMSTRONG, JR.** for criminal proceedings be and the same are hereby assumed by this court; that this cause be filed and docketed and this order entered in the minutes of this court, and that a certified copy of same be certified to said Judicial District Court, sitting as a Juvenile Court, for observance.

IT IS FURTHER ORDERED THAT the Sheriff of Harris County, Texas, take custody of said **ANTONIO ARMSTRONG, JR.** and confine him in the jail of Harris County, Texas, until further orders of this court.

A certified copy of this order is to be delivered to the Sheriff of Harris County, Texas, for said certified copy will be the authority of the Sheriff of Harris County, Texas, for arresting and holding said **ANTONIO ARMSTRONG, JR.**

No bond set.

SIGNED on the ________ DAY OF MAR 31 2017, 2017.

JUDGE, ________ DISTRICT COURT
HARRIS COUNTY, TEXAS

DISTRICT COURT OF HARRIS COUNTY TEXAS

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 1 of 7

ORIGINAL

FILED
Chris Daniel
District Clerk
MAR 29 2017 922A
Time: Harris County, Texas
By Stacey Riley
Deputy

**PETITION NO.**
**2016-04464J AMENDED**

| | | |
|---|---|---|
| **IN THE MATTER** | § | **IN THE 313TH DISTRICT COURT** |
| **OF** | § | **OF** |
| **ANTONIO ARMSTRONG JR.** | § | **HARRIS COUNTY, T E X A S** |

## ORDER TO WAIVE JURISDICTION

ON THE 8TH day of MARCH, 2017, this Court held a hearing in the above styled and numbered petition pursuant to Section 54.02 of the Texas Family Code. After reviewing all the testimonial and documentary evidence admitted at the hearing, the Court's file under this cause number of which it took judicial notice, and the Respondent's demeanor and conduct before this Court at the hearing and during interactions with the Court before the hearing, the Court now decides to waive its exclusive, original jurisdiction and discretionarily transfer the Respondent to the Criminal District Court. The Court reaches this decision because the welfare of the community requires criminal proceedings based on the seriousness of the offense alleged and the background of the child.

In reaching this decision, the Court makes the following findings of fact:

(1) There is probable cause to believe the Respondent committed the offense, as alleged in the petition, namely the offense of CAPITAL MURDER, which is a Capital Felony.

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 2 of 7

(2) The Respondent, having been born on [redacted], was 16 years old on the date of the commission of the alleged Capital Felony offense: CAPITAL MURDER.

(3) The Respondent was properly served with the petition and summons in compliance with the notice requirements of Section 53.04, 53.05, 53.06, and 53.07 of the Texas Family Code including that the summons stated the purpose of the hearing was to consider discretionary transfer to criminal district court. Moreover, the Respondent received the petition and summons at least two days before this Court conducted the hearing.

(4) The Court ordered a complete diagnostic study, social evaluation, and full investigation of the Respondent, his circumstances, and the circumstances of the alleged offense. The Court received a waiver of certification evaluation agreed to by the Respondent and his attorney.

(5) At least five days before this hearing, the attorney for the Respondent and for the State received a copy of all reports this Court considered in reaching its decision, namely: the Probation report containing the reports of the Court's consultants and the Court Report Information.

The Court then weighed, in addition to the above, the following factors and makes the below listed findings that support its decision, namely:

(1) This Court reviewed and considered whether the alleged offense was against person or property and finds in support of discretionary transfer specifically as follows:

There is probable cause to believe the Respondent committed an offense against the person of another in that there is probable cause to believe the Respondent committed the offense of murder against two individual persons during the same criminal transaction, and that because it was against the person it gives greater weight in favor of discretionary transfer under this factor.

More specifically, the Court specifically finds the following aspects of the alleged offense and Respondent's alleged participation in it particularly egregious and aggravating:

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 3 of 7

On July 29, 2016 a 911 emergency call was placed by the Respondent Antonio Armstrong Jr. who was also known as "A.J." During that 911 call the Respondent stated in a calm, hushed voice that he heard gunshots from his parents bedroom downstairs and that he was in his closet on the 3rd floor of his residence located at 5314 Palmetto Houston, Harris County, Texas. During the course of the 911 call the Respondent never states anything about seeing any intruders in the residence and in fact tells the 911 operator the only people in the residence are himself on the 3rd floor, his parents who were on the 2nd floor, and his sister who was asleep also on the 2nd floor. The Respondent affirmatively tells the 911 operator there is no one on the 1st floor. The Respondent is on the phone with 911 continuously from 1:43am until 1:56am and never mentions an intruder. Police form a perimeter around the residence in response to the 911 shooting call and do not observe anyone leaving the residence. The Respondent is heard on the 911 waking his sister up, never checking on his parents or the room from which he stated he heard gunshots though he walks right by it with his sister who he has just woken up, and going downstairs and turning the security alarm to the residence off just as the police enter the front door of the residence. Police locate the Respondent's mother, Dawn Armstrong, deceased of an apparent gunshot wound in her bed in her bedroom on the 2nd floor of the residence and find Antonio Armstrong Sr. mortally wounded of a gunshot wound next to Dawn Armstrong in the bed of their bedroom on the 2nd floor of the residence. Antonio Armstrong Sr. is transported to the hospital, but dies later that day of his injuries. At autopsy it was determined that both Dawn Armstrong and Antonio Armstrong Sr. died as a result of gunshot wounds to the head and the manner of death of each was ruled a homicide. Responding officers cleared the residence upon entry and found no open points of entry or exit, no signs of forced entry, and no other people or intruders in the residence. Officers locate a scrawled note and a 22 caliber handgun on the kitchen counter of the residence. The note states "I HAVE BEEN WATCHING FOR A LONG TIME. GET ME." The paper the note was written on match a pad of paper in one of the kitchen drawers. Officers note the handgun was warm and also indicated it was warm through the use of a FLIR device to detect heat indicating it was recently fired. There was no DNA or fingerprint evidence at all present on the handgun. Officers locate shell casings from 22 caliber bullets in the bedroom of Dawn Armstrong and Antonio Armstrong Sr. consistent with them having been shot there. Officers locate pillows at the top of the bed where Dawn Armstrong and Antonio Armstrong Sr. were asleep with holes consistent with 22 caliber bullet holes in them. Officers find a bullet hole in the ceiling of the study just outside the bedroom of Dawn Armstrong and Antonio Armstrong Sr. and found this bullet hole corresponded to a bullet hole in the floor of the Respondent's bedroom just above on the 3rd floor of the residence. Officers found an area of

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 4 of 7

burned carpet on the 2nd floor landing of the residence and lab results later showed gasoline and rubbing alcohol present as an accelerant at the point of origin of the fire. Officers found a bottle bearing the label of rubbing alcohol and containing gasoline and rubbing alcohol in the Respondents bedroom. Officers found the bullet hole in the Respondent's bedroom floor covered with a large pile of socks. Officers found a pillow and comforter in the Respondent's closet with a hole consistent with a 22 caliber bullet hole through them.

The Respondent was transported from the scene, afforded his Magistrate Warnings, and provided a lengthy recorded statement in which he adamantly denied ever touching the 22 caliber handgun that belonged to his father Antonio Armstrong Sr. numerous times since he was 8 years old. However, after he was confronted with the bullet hole that had been found in his floor the Respondent did admit to firing the handgun in his room. The Respondent told officers where his father kept this handgun. The Respondent denied knowledge of his parents being shot. The Respondent is unemotional during the interview despite knowing his mother was deceased and his father was in critical condition. The Respondent admitted to starting the fire where the carpet was burned, but stated he "accidentally" dropped a match at that location.

ProtectionOne security alarm records show the alarm to the residence is armed at 9:52pm July 28, 2016. The Respondent's sister gives a statement that she armed the system from the panel on the 2nd floor. The downstairs living room Motion Detector goes idle (indicating no internal movement) at 9:57pm. The upstairs Motion Detector goes idle (indicating no internal movement) at 10:39pm. The upstairs Motion Detector is activated again at 1:09am. The downstairs living room Motion Detector is activated at 1:25am. The security alarm is deactivated at 1:56am; the time the Respondent is heard turning the alarm off and opening the front door for police upon their arrival in response to the 911 call he placed.

(2) This Court reviewed and considered the Sophistication and Maturity of the Respondent and finds in support of discretionary transfer specifically as follows:

The Respondent is currently 17 years of age;

Further, the Respondent appears to have planned aspects of this crime in "practicing" with the handgun used to kill his parents in his bedroom through a pillow and comforter prior to committing their murders. The Respondent used an

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 5 of 7

accelerant to start a fire outside his parent's bedroom on the 2nd floor landing, but then stated it was accidental. The Respondent scrawled and left a note on the kitchen counter with the handgun used to kill his parents in an apparent effort to direct what he know would be a police investigation of their deaths. The Respondent placed a hushed 911 call stating he heard gunshots in his parent's bedroom after staging the handgun and note in the kitchen of his residence. The Court gives great weight to this level of criminal sophistication.

(3) This Court reviewed the Respondent's Record and Previous History and finds in support of discretionary transfer specifically as follows:

Officers located accelerant of gasoline and rubbing alcohol both in a bottle in the Respondent's bedroom and at the point of origin of the fire on the landing of the 2nd floor of the Respondent's residence. The Respondent admitted to starting that fire. The Court finds this to be extraneous felony delinquent conduct of Arson of a Habitation.

Officers located a "crack pipe" or a pipe commonly known to be used to smoke narcotics in the Respondent's bedroom. The pipe was fashioned out of metal and rubber bands. The pipe appeared to have been used in that heat had been applied to it melting the rubber band. The Court finds this to be extraneous misdemeanor delinquent conduct of Possession of Drug Paraphernalia.

Officers located numerous Kincaid school identification cards belonging to numerous other Kincaid school students. Testimony at the hearing indicated these identification cards were capable of being used for debit purposed on school campus. The Court finds this to be extraneous felony delinquent conduct of Fraudulent Use of Identifying Information and Forgery.

Officers located an extraneous offense report in which a male complainant had made a report of waking up while at the Respondent's residence with his penis in the Respondent's mouth. The male complainant stated this was without his consent. The Court finds this to be extraneous felony delinquent conduct of sexual assault.

(4) This Court reviewed and considered the Prospects of Adequate Protection of the Public and the Likelihood, if any, of the Rehabilitation of the Respondent by use of the Procedures, Services, and Facilities currently available to the Juvenile Court and based on the above and its knowledge of the rehabilitative

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 6 of 7

services that may be provided under Title III of the Texas Family Code and the age restrictions placed on them under the Texas Human Resources Code, finds in support of discretionary transfer specifically as follows:

The Respondent is currently 17 years old and Texas law requires that on an indeterminate sentence issued under Texas Family Code Section 54.04(l), he can only be placed on probation until his 18th birthday, leaving insufficient time in which the juvenile court may utilize the procedures, services, and facilities currently available to rehabilitate him;

Further, Texas Family Code Section 54.04 (d) (2) and Section 245.151 of the Texas Human Resources Code provides that this Court may only incarcerate the Respondent in the Texas Juvenile Justice Department until his 19th birthday, again providing insufficient time for this Court to provide the services necessary to rehabilitate him in a manner that is adequate to protect the public;

Further, the decision to seek a determinate petition is in the discretion of the prosecutor and the prosecutor chose not to seek grand jury approval in this case; *See* TEX. FAM. CODE ANN. §53.045(a) (West 2014)

Further, the crime the Respondent is alleged to have committed is so egregious and aggravated that this Court determines that based on the offense and delinquent conduct that he will not be amenable to this Court's efforts to rehabilitate him;

Based on the above, as well as the totality of the evidence presented in the clerk's record, at the hearing, in the written reports, studies, and investigations, this Court ORDERS and CERTIFIES that its jurisdiction sitting as a Juvenile Court, be WAIVED as to the petition, and that ANTONIO ARMSTRONG JR. be hereby REMANDED to the custody of the Sheriff of Harris County, Texas. It further ORDERS that ANTONIO ARMSTRONG JR. is hereby transferred to the Criminal District Court of Harris County, Texas, for criminal proceedings to be dealt with as an adult in accordance with the Texas Code of Criminal Procedure.

MAR 29 2017

Signed by me on this the ______ day of __________ 2017.

GLENN DEVLIN, Judge
313th District Court
Harris County, Texas

For Official Governmental Use Only - Do Not Disseminate to the Public: 74494948 - Page 7 of 7

I, Marilyn Burgess, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this November 30, 2023

Certified Document Number: 74494948 Total Pages: 7

Marilyn Burgess, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 51.301 and 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**